## CHARLESTON.

### BOGGS v. FRIEND.

Submitted January 18, 1916.   Decided February 1, 1916.

1. CONTRACTS—*Restraint of Trade.*

   A contract between the seller and purchaser of an established shop or business, which binds the seller, as incident to the sale and purchase of his property, not to set up and engage in a rival business within the neighborhood thereof or in such close proximity thereto as to detract from the natural patronage of such shop or business, is not void on grounds of public policy, as constituting an unreasonable restraint of trade.  (p. 535).

2. SAME—*Agreement to Abstain From Business—Enforcement.*

   In such cases the test in determining the validity or invalidity of the contract is the reasonableness of the restraint imposed, and it will be enforced as to time and space only to the extent necessary to protect the rights of the parties and the interest of the public therein, if any.  (p. 535).

3. SAME—*Restraint of Trade—Validity.*

   There is a distinction between those cases where by the terms of the contract the purchaser is put entirely out of business, and those in which the restraint is imposed as a mere incident to the sale and transfer of one's business to another, and to protect the purchaser therein.  The former class are generally condemned by the courts, the latter held reasonable, valid and enforceable.  (p. 535).

4. SAME—*Agreement to Refrain From Business—Construction.*

   Though such a contract be not in terms limited in time or space,

it will be construed as intending only such sufficient time and reasonable space as may be necessary to protect the purchaser in the thing or business purchased. (p. 536).

5.   Good Will—*Contracts of Sale—Construction.*

Where, as in this case, such contract does not *eo nomine* include the good will, but covers not only a sale of the business but the place of business also, as a shop or lot on which the business is carried on, it will ordinarily be construed as including the good will of the business, by reasonable intendment or implication. (p. 537).

Appeal from Circuit Court, Braxton County.

Suit by James A. Boggs against Silas M. Friend. From decree for defendant, plaintiff appeals.

*Reversed and remanded.*

*Hall Bros.,* for appellant.

*Hines & Kelly,* for appellee.

Miller, Judge:

The bill alleges that on and prior to July 21, 1910, defendant had been engaged in the business of a blacksmith at the forks of Little Otter Creek, in Braxton County, and was the owner of the well equipped shop and the lot on which the same was located, and where he had built up a good business, with a desirable patronage; that on that day, by verbal agreement, plaintiff purchased from defendant said lot of land, together with the blacksmith shop thereon, and all tools, implements and equipments therein, and the business aforesaid, and the good will thereof, for the price of three hundred and seventy five dollars, of which he had paid down in cash one hundred and fifty dollars, and for the residue had executed to defendant his four notes for fifty six dollars and twenty-five cents each, payable in five, ten, fifteen and twenty months from the date thereof; that a part of said contract of purchase was that defendant would not engage in the blacksmith business in the vicinity or neighborhood where said blacksmith shop was located, or at any other place so near thereto as to constitute a rival business, or detract from the patronage which would naturally or likely go to the shop and business so purchased by plaintiff from him.

It is further alleged that defendant well knew plaintiff had

purchased said property and business for the purpose of engaging in the business of blacksmithing on said lot, and with a view of obtaining the patronage and good will of the business built up by him as aforesaid; that on taking possession of said property plaintiff at once engaged in said business, that he had paid some of said notes and was ready and willing to pay the other note, and had in all respects performed the contract on his part, and was entitled to specific performance of the contract on the part of defendant and to a deed from him for said lot with general warranty.

The bill further alleges that notwithstanding his aforesaid agreement defendant, within a month or two thereafter and after plaintiff had taken possession of said property and was engaged in carrying on said business, had set up a rival shop or business at a point within a quarter of a mile of plaintiff's shop, and had been and was still engaged in carrying on such rival business in violation of his contract, and that unless restrained he would continue to do so, to the continued great damage of plaintiff.

The bill furthermore charges some defect in the title of defendant to said lot, and his probable inability to make good title thereto; but the answer putting in issue all other material allegations of the bill denies this one also, and professes defendant's ability and readiness as always on payment of the balance of purchase money to make good deed to plaintiff in accordance with his contract, and denies also that defendant had ever declined to do so.

The prayer of the bill was and is that defendant be enjoined from conducting such rival blacksmith shop, and that he also be required to specifically perform his contract with plaintiff, by executing to him a good and proper deed for said property, and that plaintiff be also given a decree against him on account of the damages sustained by breach of his contract, not to set up and carry on a competing shop as aforesaid.

On the demurrer thereto we think the bill is not multifarious, and presents a good cause for the injunctive and other relief prayed for. The demurrer does not appear to have been disposed of by the court below, except by the general decree denying plaintiff all relief and dismissing his bill on the merits, and from which decree he obtained the present appeal.

The propositions relied on to support the decree, affirmed by defendant, and challenged by plaintiff and appellant, are: First, that the contract alleged, respecting the good will of the business purchased, and defendant's agreement not to set up and conduct a rival business, were not proven; second, if proven, the contract was void, as being an unlawful restraint of trade; and, third, not being definitely limited in time or place, it was for this reason also void and unenforceable.

The first proposition, want of proof to support the contract alleged, we think should be denied. The contract, a verbal one, was substantially proven by plaintiff's evidence, though controverted by that of defendant, the only witnesses to the immediate transactions between them; and the evidence of the witnesses as to the subsequent declarations or admissions of these parties is more or less conflicting. But when we look to the situation of the parties, to all the facts and circumstances surrounding them at the time of the contract, and to their previous negotiations leading up to the contract, as to which there is little if any conflict in the evidence, to the declared purposes of the defendant in wanting to sell, and of the plaintiff in wanting to buy an established business, and the fact admitted by defendant, that the subject of his getting down and out of the business was discussed, not only between himself and plaintiff, prior to the contract, but also between himself and other prospective purchasers, and the evidence of disinterested witnesses as to his subsequent declarations, that he had sold out to plaintiff, and had agreed not to set up or engage in any rival business, all satisfies us beyond doubt, that the contract was in fact substantially as alleged in the bill.

The business was a comparatively small affair in the country, and it is not to be presumed that plaintiff, who, the evidence shows, had worked for defendant, and seems to have been fairly alive to his personal interests, would have bought out such a business, unless protected therein by some such contract. It seems unreasonable that plaintiff would have bought a business situated in close proximity to defendant's place of residence without some provision against his setting up a rival or competing business.

We cannot recite the evidence in detail. It is sufficient to

say for the present it satisfies us beyond any reasonable doubt that the contract was substantially as alleged, and that plaintiff is entitled to an injunction unless the contract be void and unenforceable upon one or both of the other grounds relied upon and affirmed by defendant.

First, then, is the contract void on grounds of public policy as being an unlawful restraint upon trade? It never was the law that every restraint upon trade was to be deemed unlawful. A very good history and review of the English and American cases on this subject, by Mr. Amasa M. Eaton, is found in 4 Harvard Law Rev., 1890-91, p. 128; and another by Mr. Frederick H. Cooke, in 35 Am. Law Rev. (1901), p. 836. By reference to these articles and the cases reviewed it will be found that generally the test applied has been the *reasonableness* of the restraint imposed by the terms of the contract. As per Tindal, C. J., in *Horner* v. *Graves,* (1831), 7 Bing. 735, and in *Hitchcock* v. *Coker,* (1837) 6 Ad. & El. 438; and per Parke, B., in *Mallan* v. *May,* (1843), 11 M. & W. 653. See also among the other cases cited and reviewed by Mr. Eaton, particularly the American cases of *Diamond Match Co.* v. *Roeber,* (1887) 106 N. Y. 473; *Herreshoff* v. *Boutineau,* (R. I.) 19 Atl. 712; and *Oregon St. Nav. Co.* v. *Winsor,* (1873), 20 Wall. 64.

In determining the validity or invalidity of contracts in restraint of trade, as many of these cases referred to hold, the public interests, as well as those of the immediate parties to the contract, must be consulted and protected. While the test of *reasonableness* will be applied as between the immediate parties and so as not to allow the terms of the contract to be carried beyond the time or space necessary to protect their rights, the public interests will also be jealously guarded, and contracts which are calculated to rob one of his right to earn his daily bread, or to impoverish him, and cause him or his family to become a charge upon the public charities, or to deprive the public of valuable benefits to accrue from his skill, business or employment, will not be enforced. 35 Am. Law Rev., *supra,* 838, and cases cited.

Some of the decisions make a distinction between that class of cases where the contract by its terms puts one of the parties entirely out of employment and closes up his business, so that

he and the public are deprived of the benefits thereof, and cases where the restraint imposed is a mere incident to the sale and transfer of his business to another, and to protect the purchaser therein. While the 'former class of cases are generally condemned by the courts, there are few if any decisions that contracts containing restraints which are merely incidental to the sale and transfer of a business, and for the reasonable protection of the purchaser thereof, are invalid as against public policy. Such contracts are generally upheld as being reasonable and enforceable. 2 Elliott on Cont., sections 796-808, inclusive, and cases cited in notes; Law Reviews, *supra; Kramer* v. *Old,* 119 N. C. 1, 56 Am. St. Rep. 650, 655, and note citing numerous cases. The latter case, with others cited in the note, support the right of appellant to the injunctive process prayed for.

Lastly, is the contract void, because not definitely limited in time and space? While some of the earlier decisions may furnish some basis for the proposition contended for, the old rule seems to have been greatly relaxed in more recent times. Courts and the text writers now generally hold that such contracts, whether so limited in terms or not, will be construed as intending only such sufficient time and such reasonable space as may be necessary to protect the purchaser in the thing or business purchased. 6 R. C. L. 894, 902; *Hitchcock* v. *Coker, supra; Hubbard* v. *Miller,* 27 Mich. 15, 15 Am. Rep. 153; *Ru Ton* v. *Everitt,* 35 App. Div. 412, 54 N. Y. Supp. 896; *Curtis* v. *Gokey,* 68 N. Y. 300; *Anchor Electric Co.* v. *Hawkes,* 171 Mass. 101, 41 L. R. A. 189, 68 Am. St. Rep. 403, 50 N. E. 509; *Transportation Co.* v. *Pipe Line Co.,* 22 W. Va. 600, syllabus point 3.

As to the time such contract will be permitted to endure when not specifically limited by the terms thereof, the implication is that the agreement is to be operative during the seller's life. 6 R. C. L. *supra,* 895, and note and cases cited. Nothing is shown in this case to take it out of this general rule. The place of the business being in the country, where the changes in the circumstances and conditions of the business are few and naturally of slow growth, it is not likely lifetime restraint on defendant would work hardship upon him or be regarded unreasonable.

As to the territorial limits to which such reasonable restraint should go, it would be impossible to describe it by definite lines, but in this case, the restraint should go to the extent necessary, within the reasonable intendment of the parties, to fully protect the plaintiff in the business purchased, and in the good will and patronage plainly intended by the contract. In *Hubbard* v. *Miller, supra,* it was decided, and we think correctly decided, that such an agreement should be construed to impose a restraint upon the defendant within such limits about the place as the business there located would naturally embrace. Such a limitation as to space we think sufficiently definite for all practical purposes, and to protect the plaintiff in the enjoyment of his property and against breaches of his contract by defendant.

But it is urged in argument that the contract as alleged and proved did not in terms include the good will of the business. A sufficient answer to this proposition is, that not only was the business sold, but the place of business, the shop and lot on which it stood, were also sold and agreed to be conveyed along with the business. Though not mentioned *eo nomine* in the contract, such a sale and transfer of the property and business will ordinarily carry with it, by reasonable intendment or implication, the good will. 14 Am. & Eng. Ency. Law, (2nd ed.) 1089, paragraph c, and notes.

Upon the legal principles herein enunciated we are clearly of opinion that the plaintiff is entitled to the injunctive remedy prayed for, and to specific performance of his contract and to damages also, if damages were actually sustained, unless for reasons about to be stated, specific performance of the contract should not, but the alternative remedy of rescission as prayed for should be decreed.

As already stated, plaintiff alleges defective title in the defendant, and impliedly at least his unwillingness to accept in performance of his contract a deed for such title as the defendant actually has. And as to what damages, if any, plaintiff has sustained, his evidence is only general in nature, and is without data upon which to base a proper decree or judgment for damages. Wherefore, we ought not to decree specific performance at this time.

Having settled the principles which we think should govern

the disposition of the cause, we are of opinion to reverse the decree, and remand the cause, with directions to the circuit court, by title reference or otherwise, to ascertain the true state of defendant's title, and if good, and such as the plaintiff ought to accept in the performance of his contract, to award an injunction against defendant as indicated herein, and also upon the payment of the balance of the purchase money ascertained to be due from the plaintiff to defendant, to decree that upon the payment thereof to him defendant shall make, execute and deliver to the plaintiff a deed of general warranty for the property aforesaid, in accordance with said contract, and that the court also, by further proceedings to be had in the cause, in accordance with rules and principles governing ·courts of equity, ascertain and decree in favor of plaintiff against defendant, such actual damages, if any, as he may prove himself entitled to.

*Reversed and remanded.*