478 S.E.2d 363

**R. Joe WEAVER, O.D., and Lana M. Weaver, O.D., Plaintiffs Below, Appellees,**

v.

**Douglas F. RITCHIE, O.D., Defendant Below, Appellant.**

**No. 23080.**

Supreme Court of Appeals of West Virginia.

Submitted Jan. 16, 1996.

Decided Oct. 16, 1996.

Robert L. Bays, Bowles, Rice, McDavid, Graff & Love, Parkersburg, for Appellees.

George J. Consenza, Consenza & Underwood, Parkersburg, for Appellant.

RECHT, Judge: [1]

This matter concerns the validity of a non-competition covenant ancillary to the sale of an optometric practice, known as the Vienna Eye Clinic, by Douglas F. Ritchie, O.D.[2] (appellant) to R. Joe Weaver, O.D. and Lana M. Weaver, O.D. (appellees).

After a bench trial of several days, the trial court made findings of fact and conclusions of law holding that the covenant was valid and enforceable and entered a permanent injunction enjoining the appellant from practicing optometry within an area measured by a radius of fifty (50) miles from Vienna, West Virginia, and for a period of fifteen (15) years after the date of the sale. We affirm.

## I.

### THE FACTS

The appellant is an optometrist who, until August, 1989, operated a practice of optometry in Vienna, West Virginia, trading as the Vienna Eye Clinic. The appellees, who also are optometrists, purchased the appellant's optometric practice[3] governed by the terms of an "Agreement of Sale of Optometric Practice and Employment of Principal Agent" (Agreement) executed on August 4, 1989.

The purchase price for the practice was structured as follows:

All personal assets including goodwill and excluding real estate—$165,000;

Assumption of the payment of two outstanding promissory notes—$72,000;[4]

---

1. Pursuant to an administrative order entered by this Court on October 15, 1996, the Honorable Arthur M. Recht, Judge of the First Judicial Circuit, was assigned to sit as a member of the West Virginia Supreme Court of Appeals commencing October 15, 1996 and continuing until further order of said Court.

2. The agreement of sale of the optometric practice recognizes the sellers as Douglas F. Ritchie, O.D. and his wife Yvonne Ritchie, however, only Douglas Ritchie was the active practicing optometrist among the sellers and the only seller who is a party to this injunction proceeding. Presumably Yvonne Ritchie was a party to the sales agreement because of her interest in the real estate which was an integral part of the sales agreement, but not relevant to the issues involved in this litigation.

3. The record does not explicitly describe all of the functions of the practice of optometry that was sold, however, there is sufficient reference throughout the testimony offered during the permanent injunction hearing to conclude that the practice was fully integrated to include eye examinations as well as the sale of lenses, contact lenses, and frames as an adjunct to the eye examinations.

4. The sales agreement stipulated that the balance due upon the two promissory notes was $42,000. After the agreement was executed, the parties recognized that one note had been understated by $30,000.

Payment for covenant not to compete— $175,000.[5]

The provision which is the centerpiece of this appeal is the covenant of the seller (appellant) to "refrain from the practice of optometry, or in any manner participating in the delivery of eye care services" for a period of fifteen years after August 1, 1989,[6] within an area measured by a radius of fifty miles from the city of Vienna, West Virginia.[7]

All apparently went well for the five years during the post-Agreement employment period. At the conclusion of the five-year employment period, the appellant attempted to renegotiate an additional employment period, only this time demanding an increase in the annual compensation from $60,000 to $72,000 and reducing the number of days devoted to practicing optometry from eighty-six days to eighty days, and finally to convert an at-will employment status to a guaranteed employment term of five years.

The Agreement required the parties to attempt to renegotiate the terms and conditions of an extended employment period. The parties were unable to agree upon the terms of employment beyond the first five-year period. The appellant's reaction to the failure to continued employment upon his demands was to promptly announce to the appellees and the public that he was no longer associated with the Vienna Eye Clinic and would be serving his many patients from a "new state-of-the-art optometric practice" within four blocks of the Vienna Eye Clinic. This announced new location was within fifty miles of Vienna, West Virginia and within the fifteen-year period of restraint.

The appellees sought and obtained an injunction permanently enjoining the appellant from violating the covenant not to compete contained in the Agreement. It is from this order granting the permanent injunction that the appellant appeals, contending that the covenant not to compete as expressed in the Agreement restricting the practice of optometry within a radius of fifty miles of Vienna, West Virginia and for a term of fifteen years after the date of sale is unreasonable and, therefore, unenforceable.[8] We disagree, and take this opportunity to refine our jurisprudence on the subject of a covenant not to compete ancillary to the sale of a business or professional practice, compared and contrasted with a covenant not to compete ancillary to an employment agreement. We have discussed the latter arrangements on a number

---

5. The Agreement also provided that the purchasers (appellees) would employ the seller (appellant) for a period of five years with the payment of a salary of $60,000 each year. Further, the appellant would be retained as a consultant carrying an annual consulting fee of $30,000 for a period of five years. The Agreement also contained an option to purchase the real estate upon which the practice was conducted for a fixed purchase price of $278,000, which was exercised at the end of 1989.

6. In reality, the covenant not to compete would endure for 10 years because the seller was employed by the buyers for the first five years of the 15 year period.

7. The entire non-competition provision of the Agreement is as follows:

Other than the terms of employment set forth herein, the Seller agrees that from and after August 1, 1989, he will totally refrain from the practice of optometry, or in any manner participate in the delivery of eye care services, products, advice or consultation within a radius of 50 miles of Vienna, West Virginia, for a period of fifteen years. This covenant is made for and in the special consideration of the sum of One Hundred Seventy Five Thousand Dollars ($175,000.00) payable in 60 equal installments of Two Thousand Nine Hundred Sixteen and 66/100 Dollars beginning August 1, 1989.

Buyers employment of Seller under the terms of this agreement shall in no way be construed as a waiver of any other provisions of this section. Seller agrees not to recommend any other competing optometrist or business other than Buyer.

8. An additional argument of the appellant is that the appellees acquiesced in the appellant's "practice" of optometry within the proscribed geographic area (Belpre, Ohio) and time period (within the first five years of the post-Agreement period). This acquiescence, argues the appellant, estopped the appellees claiming any protection under the covenant not to compete. We find no merit in this contention because the trial court found that the appellant worked no more than two days each year between August, 1989, and January, 1991, at the Belpre practice and did not have his name affiliated in any manner with this practice which was visible to the public. This conduct is *de minimus*.

of occasions,[9] however we have not had an opportunity to discuss a covenant not to compete ancillary to the sale of a business since 1950 in *Axford v. Price*, 134 W.Va. 725, 61 S.E.2d 637 (1950).[10]

## II.

## STANDARD OF REVIEW

■ As is our custom, we begin any appellate analysis by first establishing the appropriate standard of review. The core of this appeal is the appellant's challenge to the trial court's findings of fact and conclusions of law which serve as predicates to the granting of the permanent injunction enforcing the covenant restricting competition for a given period of time in a defined geographical area. In reviewing challenges to the findings and conclusions of the trial court, we apply a two-pronged deferential standard of review with the final order and ultimate disposition (granting of the permanent injunction) reviewed under an abuse of discretion standard, and the underlying factual findings under a clearly erroneous standard. *Phillips v. Fox*, 193 W.Va. 657, 458 S.E.2d 327 (1995); *see also* Syllabus Point 1, *G Corp. v. MackJo, Inc.*, 195 W.Va. 752, 466 S.E.2d 820 (1995) (holding that a permanent injunction rests in the sound discretion of the trial court and will not be disturbed on appeal unless there

is a clear showing of an abuse of discretion) (quoting Syllabus Point 11 of *Stuart v. Lake Washington Realty*, 141 W.Va. 627, 92 S.E.2d 891 (1956). In *Phillips*, we noted that in applying a deferential standard, we review the trial court's findings of fact following a bench trial, including mixed facts/law findings, under the clearly erroneous standard. If the trial court's findings of fact are not clearly erroneous[11] and the correct legal standard is applied, its ultimate ruling will be affirmed as a matter of law. We conclude that the trial court's findings of fact are not clearly erroneous, the trial court applied the correct legal standard to these facts so that the ultimate ruling granting the permanent injunction is affirmed as a matter of law. *Phillips*, 193 W.Va. at 662, 458 S.E.2d at 332.

## III.

## DISCUSSION

## A.

## *Distinguishing Covenants Not to Compete Ancillary to Sales As Opposed to Employment Agreements*

We begin our discussion with the acknowledgment that covenants not to compete, whether ancillary to a sales or employment agreement, are similar in that they both involve restraints of trade. This similarity al-

---

**9.** *Chicago Towel Co. v. Reynolds*, 108 W.Va. 615, 152 S.E. 200 (1930); *O. Hommel Co. v. Fink*, 115 W.Va. 686, 177 S.E. 619 (1934); *Household Finance Corp. v. Sutton*, 130 W.Va. 277, 43 S.E.2d 144 (1947); *Pancake Realty Co. v. Harber*, 137 W.Va. 605, 73 S.E.2d 438 (1952); *Helms Boys, Inc. v. Brady*, 171 W.Va. 66, 297 S.E.2d 840 (1982); *Reddy v. Community Health Foundation*, 171 W.Va. 368, 298 S.E.2d 906 (1982); *Torbett v. Wheeling Dollar Savings & Trust Co.*, 173 W.Va. 210, 314 S.E.2d 166 (1983); *Appalachian Labs., Inc. v. Bostic*, 178 W.Va. 386, 359 S.E.2d 614 (1987); *Gant v. Hygeia Facilities Found., Inc.*, 181 W.Va. 805, 384 S.E.2d 842 (1989); *Moore Business Forms, Inc. v. Foppiano*, 181 W.Va. 305, 382 S.E.2d 499 (1989) (per curiam); *The Wheeling Clinic v. Van Pelt*, 192 W.Va. 620, 453 S.E.2d 603 (1994).

**10.** The appellant contends that the facts of *Appalachian Laboratories, Inc. v. Bostic*, 178 W.Va. 386, 359 S.E.2d 614 (1987) (per curiam) are closely aligned with the facts of this case, presumably as they relate to a restrictive covenant ancillary to a sale of a business, and therefore

helpful in guiding a resolution of this case. Despite the lack of any precedential value of the per curiam opinion in *Bostic* (*see Lieving v. Hadley*, 188 W.Va. 197 n. 4, 423 S.E.2d 600 n. 4 (1992), the facts are dissimilar to this case because the restrictive covenant in *Bostic* was ancillary to an employment arrangement and not part of a prior sale by the employee of business assets to the employer.

**11.** We have defined clearly erroneous as:

A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety.

*In the Interest of Tiffany Marie S.*, 196 W.Va. 223, 231, 470 S.E.2d 177, 185 (1996).

lows the application of a common legal standard measuring the validity and enforcement of the covenant. This standard derives from *Mitchell v. Reynolds,* 1 P. Wms. 181, 24 Eng. Rep. 347 (Q.B.1711), as the "Rule of Reason" which requires weighing all the facts and circumstances of a case to decide whether a restriction unreasonably restrains competition.[12]

Once we get past the similarity of non-competition covenants ancillary to a sales or employment agreement by looking to the rule of reason to test the validity and enforceability of both covenants, the differences between the type of agreement containing the covenants become apparent. Because the motivation and purpose of the restrictive covenant embraced in a sales agreement are substantially different from a covenant in an employment agreement, the rule of reason is applied with a lesser scrutiny in a sales contract than the covenant ancillary to an employment agreement. *See Alexander & Alexander, Inc. v. Danahy,* 21 Mass.App.Ct. 488, 488 N.E.2d 22, 28 (1986) ("non-competition covenants arising out of a sale of a business are enforced more liberally than such covenants arising out of an employer-employee relationship" (citations omitted)); *Kloville, Inc. v. Kinsler,* 239 Ga. 569, 238 S.E.2d 344 (1977) (stating covenants ancillary to sales of businesses are treated less stringently than covenants ancillary to employment contracts); *Farmer v. Airco, Inc.,* 231 Ga. 847, 204 S.E.2d 580 (1974) (stating sale of business covenants are interpreted and enforced with greater leniency than employment contracts); *Insurance Center, Inc. v. Hamilton,* 218 Ga. 597, 129 S.E.2d 801 (1963) (discussing that in determining a covenant's reasonableness, greater latitude is allowed for sale of business covenants than for employment covenants); *Morgan's Home Equipment Corp. v. Martucci,* 390 Pa. 618, 136 A.2d 838 (1957) (declaring that covenants not to compete which are ancillary to employment will be subjected to a more stringent test of reasonableness than that which is applied to such restrictive covenants ancillary to the sale of a business), *citing* Restatement of Contracts § 515(b), cmt. b (1932); Gary P. Kohn, *A Fresh Look: Lowering the Mortality Rate of Covenants not to Compete Ancillary to Employment Contracts and the Sale of Business Contracts in Georgia,* 31 Emory L.J. 635 (1982).

The reason why a less stringent test of reasonableness is applied to a restrictive covenant ancillary to the sale of a business is found in the conceptual differences of the goals to be achieved by the enforcement of these two types of covenants. A restriction imposed upon the seller of a business affords a person the freedom to sell something that has been acquired by virtue of their labor, skill or talent at the highest possible price. A restriction imposed upon a person following the termination of a period of employment imposes a restraint upon a person's freedom to work for himself. Public policy favors the former and frowns upon the latter.

The distinction between the covenants and the two types of arrangements may best be expressed by the Georgia Supreme Court in *Orkin Exterminating Co. v. Dewberry,* 204 Ga. 794, 51 S.E.2d 669, 676 (1949), *overruled on other grounds* in *Barry v. Stanco Communications Prod., Inc.,* 243 Ga. 68, 252 S.E.2d 491 (1979):

> Many reasons have been advanced for the broader latitude given to contracts of sale as distinguished from contracts of employment (citation omitted). 'Public policy requires that every man shall be at liberty to work for himself; and shall not be at liberty to deprive himself or the state of his labor, skill, or talent by any contract that he enters into. On the other hand, public policy requires that when a man has by skill, or by any other means, obtained something which he wants to sell, he should be at liberty to sell it in the most advantageous way in the market; and in order to enable him to sell it advanta-

---

12. The rule of reason announced in *Mitchell v. Reynolds,* 1 P. Wms. 181, 24 Eng. Rep. 347 (Q.B.1711), was reformulated in *Horner v. Graves,* 7 Bing. 735, 135 Eng. Rep. 284 (C.P. 1831) ("whether the restraint is such only as to afford a fair protection to the interests of the party in favour of whom it is given, and not so large as to interfere with the interests of the public."). *See* Harland M. Blake, *Employee Agreements Not to Compete,* 73 Harv.L.Rev. 625 (1960).

geously in the market, it is necessary that he should be able to preclude himself from entering into competition with the purchaser. In such a case, the same public policy that enables him to do this does not restrain him from alienating that which he wants to alienate, and therefore enables him to enter into any stipulation which, in the judgment of the court, is not unreasonable, having regard to the subject matter of the contract. There are several reasons for upholding a covenant on the part of the vendor in all such cases to desist from the business in competition with the purchaser, which do not obtain in other cases * * * the vendor receives an equivalent for his partial abstention from that business, in the increased price paid him for it on account of his covenant; and his entering into and observance of the covenant not only do not tend to his pauperization to the detriment of the public, but on the contrary, by securing to him the full value of his business and its good will, a value which he has an absolute right to secure in this way, the covenant operates to his affirmative pecuniary benefit and against his impoverishment.' These reasons for upholding a covenant in a contract of sale do not obtain in a contract of employment. On the contrary, restrictive covenants in employment contracts 'tend to injure the parties making them; diminish their means of procuring livelihoods and a competency for their families; tempt improvident persons, for the sake of present gain, to deprive themselves of the power to make future acquisitions, and expose them to imposition and oppression; tend to de-

prive the public of the services of men in the employments and capacities in which they may be most useful to the community as well as to themselves.'

Covenants not to compete ancillary to the sale of a business or profession serve a useful economic function by enhancing the vendibility of a business or profession because the seller, by promising not to compete with the buyer, is able to receive the highest possible price for the property that is sold and the buyer is willing to pay a premium for the business or profession knowing it is protected by not running the risk of losing what was purchased should the seller become a competitor. *See Morgan's Home Equipment Corp. v. Martucci,* 390 Pa. 618, 136 A.2d 838 (1957). An agreement by the seller to refrain from competition with the buyer is an indispensable ingredient to the transfer of the goodwill of the business which is often a more important inducement for the purchase of a business than the physical assets.[13] *Id.*

On the other hand, a covenant not to compete ancillary to an employment contract does not serve a direct useful economic function associated with the sale of a property interest or goodwill. The objective of a post-employment restraint is to prevent the competitive use, for a defined period of time, of information, skills or relationships which are distinctive to the employer and which the employee acquired during a training period and beyond in the course of employment. Harland M. Blake, *Employee Agreements Not to Compete,* 73 Harv.L.Rev. 625, 647 (1960).[14]

---

13. The name, reputation for service, reliability and trade secrets of the seller, cumulatively known as goodwill, are often more important inducements for the purchase of a business than the physical assets. *Morgan's Home Equipment Corp. v. Martucci,* 390 Pa. 618, 136 A.2d 838 (1957). Goodwill is generally not associated to such a great extent in the sale of a professional practice, however, the record in this case is enlightening in recognizing that the optometry practice that was sold involved more than just professional eye examinations, because a substantial part of the revenue generated by the practice involved the sale of lenses, contact lenses and frames. *See* note 3 *supra.* The latter phase of this optometric practice is more closely associated with goodwill.

14. Professor Blake, in this seminal article on post-employment restraints, recognizes that a non-competition covenant in a sales context is indispensable in assuring that the buyer receives the full value of what is being purchased. Such is not the case with post-employment restraints which should foreclose any analogy with restraints incident to sales beyond testing the validity of the scope of the non-competition covenant by a rule of reason.

A transfer of goodwill cannot be effectively accomplished without an enforceable agreement by the transferor not to act so unreasonably to diminish the value of that which he is selling. The same is true in regard to any other property interests of which exclusive use is part of the value. The restraint on the

A final reason for distinguishing post-sale restraints from post-employment restraints so that the former are analyzed with a less vigorous standard is that post-employment restraints have a more detrimental effect upon the public interest in maintaining competition than post-sale restraints. Each post-employment restraint deprives society of the valuable economic services offered by the labor of one of its members, conversely the post-sale restraint does not disturb the status quo because the transferred business continues to operate albeit under new ownership. *See Budget Rent–A–Car Corp. of America v. Fein,* 342 F.2d 509, 515–16 (5th Cir.1965) (observing that the community is left in the same position it occupied before the sale of the business—"with ongoing concern"); *Hood v. Legg,* 160 Ga. 620, 628–29, 128 S.E. 891, 895 (1925) (discussing that the sale of a business does not stifle competition when the ownership of a business changes hands; the business is carried on as usual only now by a new owner). *See also Lektro–Vend Corp. v. Vendo Corp.,* 500 F.Supp. 332 (D.C.Ill.1980) (stating that an anti-competitive covenant ancillary to a sale of a business which is necessary to protect the purchaser's legitimate property interests does not violate anti-trust laws).

## B.

### *West Virginia Jurisprudence/Covenants Not to Compete*

West Virginia has a rich history of cases analyzing non-competition covenants between a seller and purchaser of a business which

are maps guiding our way today, as well as assisting in the future drafting and enforcement of similar covenants: first, in *West Virginia Transportation Co. v. Ohio River Pipe Line Co.,* 22 W.Va. 600 (1883), then in *Boggs v. Friend,* 77 W.Va. 531, 87 S.E. 873 (1916), and finally in *Axford v. Price,* 134 W.Va. 725, 61 S.E.2d 637 (1950); all are cases which considered non-competition covenants ancillary to the sale of a business. Each case recognized the validity of the restraint upon competition tested by the reasonableness of the restraint imposed. This rule of reason is best expressed in Syllabus Point 1 of *Boggs* as:

> A contract between the seller and purchaser of an established shop or business, which binds the seller, as incident to the sale and purchase of his property, not to set up and engage in a rival business within the neighborhood thereof or in such close proximity thereto as to detract from the natural patronage of such shop or business, is not void on grounds of public policy, as constituting an unreasonable restraint of trade.

*Boggs* further refined the rule of reason by framing a three-dimensional course determining the validity or invalidity of contracts in restraint of trade by assuring the protection of the buyer, seller and the public.

While the *test of reasonableness* will be applied as between the immediate parties and so as not to allow the terms of the contract to be carried beyond the time or space necessary to protect their rights, the

transferor in such a case necessarily runs concurrently with the use of the property by the covenantee ... The essential purpose of the post-employment restraint is quite different, however. Its objective is not to prevent the competitive use of the unique personal qualities of the employee—either during or after the employment—but to prevent competitive use, for a time, of information or relationships which pertain peculiarly to the employer and which the employee acquired in the course of the employment. Unlike a restraint accompanying a sale of goodwill, an employee restraint is not necessary for the employer to get the full value of the thing being acquired—in this case, the employee's current services. The promise not to act in certain ways after terminating employment is something additional which the

employer may or may not feel to be important and worth bargaining and paying for, depending on the circumstances. A sale of goodwill implies some obligation to deliver the thing sold by refraining from competition, just as an employment contract implies some obligation not to impair the value of the services rendered by competitive activity during the period of employment. But no such commitment not to compete after employment can be implied from an ordinary employment contract. Thus, courts properly should, and do, look more critically to the circumstances of the origin of post-employment restraints than to the circumstances of other classes of restraints. Harland M. Blake, *Employee Agreements Not to Compete,* 73 Harv.L.Rev. 625, 646–7 (1960).

public interests will also be jealously guarded. . . .

*Boggs v. Friend,* 77 W.Va. 531, 535, 87 S.E. 873, 875.

Finally, *Boggs* serves as a precursor for demarcating non-competition covenants in sales as opposed to employment contracts when we recognized that:

[C]ontracts which are calculated to rob one of his right to earn his daily bread, or to impoverish him, and cause him or his family to become a charge upon the public charities, or to deprive the public of valuable benefits to accrue from his skill, business or employment, will not be enforced.

*Boggs v. Friend,* 77 W.Va. 531, 535, 87 S.E. 873, 875.

This same three dimensional approach to the rule of reason announced in *Boggs* was adapted to apply to a covenant not to compete in a contract in *Reddy v. Community Health Found.,* 171 W.Va. 368, 298 S.E.2d 906 (1982). In *Reddy,* however, for some reason we chose not to recognize what we said in *Boggs* in 1916. We discussed a covenant not to compete in *Reddy* which involved a contract between a physician and a non-profit health foundation chartered for the purpose of providing health care in the rural community of Man, West Virginia. The contract in *Reddy* does not precisely fit into either the sales or employment category, but it is more closely aligned with an employment contract, with the rule of reason fashioned to apply to employment contracts used to reach a resolution of the matter.[15]

In *Reddy,* we recognized that a restrictive covenant is reasonable only if it (1) is no greater than required for the protection of the employer, (2) does not impose undue hardship on the employee, and (3) is not injurious to the public. *Id.* at 374, 298 S.E.2d at 911.

■ There is no sound reason why we should not now extrapolate from our deci-sions in *Boggs* and *Reddy* to reformulate the Rule of Reason to test the validity of a covenant not to compete ancillary to the sale of a business or profession:

To determine if a covenant not to compete ancillary to a sale of a business is reasonable we use a three-part inquiry: A covenant not to compete is reasonable only if it (1) is no greater than is required for the protection of the buyer; (2) does not impose an undue hardship upon the seller, and (3) is not injurious to the public.

■ We now proceed to examine the appellant's claim of unreasonableness within the context of this "Rule of Reason" less stringently applied to this sale of an optometric practice justified by the analysis of covenants not to compete ancillary to a sales agreement contained in Section III.A. of this opinion.

### C.

### *Reasonableness of a Covenant Not to Compete Ancillary to the Sale of The Optometric Practice in this Case*

■ Is a covenant not to compete for a period of fifteen years within fifty miles of Vienna, West Virginia ancillary to the sale of an optometric practice: (1) greater than is required for the protection of the buyer?; (2) an imposition of an undue hardship upon the seller?; or, (3) injurious to the public?

#### 1. *Is the restriction greater than is required by the buyer?*

The answer to this inquiry exists in analyzing whether there is a reasonable relationship between a fifteen year durational requirement and the protection of the legitimate interests of the purchaser. The trial court found that: (1) the purchaser required a fifteen year period to recoup his investment so long as the seller was not competing against him; (2) the bank providing the fi-

---

15. Dr. Reddy was not an employee of the health care foundation, but instead was "retained" by the foundation to practice medicine at the foundation. The foundation provided all office space, supplies, instruments and secretarial and other services necessary to support the practice of medicine. The foundation paid Dr. Reddy a fixed amount for each office visit and for each day of inpatient hospital treatment. In exchange, the foundation became the owner of Dr. Reddy's receivable fees. Under the contract Dr. Reddy was considered an independent contractor.

nancing to complete the purchase relied upon a fifteen year period of non-competition as a condition for making the loan; and (3) approximately eighty-five percent of the gross business generated by the Vienna Eye Clinic comes from patients/customers within fifty miles of Vienna, West Virginia.[16]

With these findings, which are not clearly erroneous, we have no difficulty reaching the conclusion that a duration of fifteen years was necessary to protect the legitimate interests of the purchaser (appellee).

### 2. *Does the covenant impose an undue burden upon the seller?*

Again, relying upon the factual findings of the trial court: (1) the seller was paid a premium of $175,000 for agreeing not to compete with the purchaser; (2) there exist opportunities for the seller to practice the optometric profession outside a fifty mile radius of Vienna, West Virginia; and (3) the compensation received during the five (5) year employment period following the sale provided sufficient resources to enable the seller to support himself without the immediate need to compete with the buyer inside the fifty mile radius of Vienna, West Virginia.[17]

With these findings, which are not clearly erroneous, we have no difficulty reaching the conclusion that the covenant does not impose an undue hardship upon the seller (appellant).

### 3. *Is the public injured by the restrictive covenant?*

Finally, the trial court found that there are a number of competitive optometric offices within a radius of fifty miles of Vienna, West Virginia so that there would be no significant harm to the public if the seller were not permitted to practice within that geographical area.

With these findings, which are not clearly erroneous, we have no difficulty reaching the conclusion that the restrictive covenant is not injurious to the public.

## IV.

## CONCLUSION

Accordingly, when we analyze the restrictive covenant in this case as against a Rule of Reason less stringently applied to this sale of an optometric practice, the conclusion must be that a restrictive covenant of fifteen years' duration and fifty miles in scope is not unreasonable and is enforceable.

We are mindful of the burden shifting model of the "Rule of Reason," testing restrictive covenants in an employment context sanctioned in *Reddy*.[18] We find no useful purpose of adopting a similar analysis in determining the enforceability of a restrictive covenant ancillary to the sale of a business or profession. The more liberal review

---

16. The specific language of the court's finding is as follows:

> Statistics from the Vienna Eye Clinic from February, 1992 through December, 1994 show the following information:
> approximately 13,755 different people (patients) were seen during this period of time—some were patients who had never been to Vienna Eye Clinic before and some were patients who had been seen at Vienna Eye Clinic before; 2–3% of the patients of Vienna Eye Clinic live 50 miles or more from Vienna, West Virginia;
> approximately 15% of the patients of Vienna Eye Clinic live 35–40 miles or more from Vienna Eye Clinic; and, over 70% of the patients of Vienna Eye Clinic are from Wood County, West Virginia or Washington County, Ohio. Wood County, West Virginia and Washington County, Ohio are completely within a 50 mile radius of Vienna, West Virginia.

17. The specific language of the court's finding is as follows:

> There is no undue hardship to Defendant due to the availability of work outside the fifty (50) mile radius from Vienna, West Virginia and the amount of compensation which he received during the five (5) year period of time from 1989 to 1994 for the purchase of the Vienna Eye Care Business from Plaintiffs.

18. "An employee may rebut the presumptive enforceability of a restrictive covenant by showing: (1) that he has no 'trade assets' of the employer to convert; (2) that such 'trade assets' as he has belong to him and not to the employer; (3) that the employer could be equally well protected by a narrowed covenant; or (4) that the employer has had time to recoup any extraordinary investment in the employee." Syllabus Point 4, *Reddy v. Community Health Foundation*, 171 W.Va. 368, 298 S.E.2d 906 (1982).

mechanism measuring the reasonableness and therefore enforceability of a restrictive covenant ancillary to the sale of a business permits a clean, crisp presentation of the evidence by the party in whose favor the covenant was negotiated. Accordingly, the burden of producing evidence that a restrictive covenant ancillary to the sale of a business was reasonable, as that term is defined in this opinion, is upon the party seeking to enforce the covenant, in this case the purchaser. Our review of the record in this case convinces us that the purchaser has carried this burden.

Affirmed.

ALBRIGHT, J., deeming himself disqualified, did not participate in this case.