2007 WY 80

WSP, INC., a Wyoming Corporation, d/b/a Wyoming Steel Products, David W. Trefren and David W. Trefren, Trustee of the David W. Trefren Revocable Trust Dated the 29th Day of June 1999, Appellants (Plaintiffs),

v.

WYOMING STEEL FABRICATORS AND ERECTORS, INC., a Wyoming Corporation, Appellee (Defendant).

No. 06–192.

Supreme Court of Wyoming.

May 11, 2007.

Representing Appellants: James R. Salisbury and Sean C. Chambers, of Riske, Salisbury & Kelly, P.C., Cheyenne, Wyoming. Argument by Mr. Salisbury.

Representing Appellee: Ryan J. Schwartz, of Williams, Porter, Day & Neville, P.C., Casper, Wyoming; John E. Masters, of Hathaway & Kunz, P.C., Cheyenne, Wyoming. Argument by Mr. Schwartz.

Before VOIGT, C.J., and GOLDEN, HILL, KITE, and BURKE, JJ.

BURKE, Justice.

[¶ 1] Appellants, WSP, Inc., David W. Trefren, and the David W. Trefren Revocable Trust, (collectively, "WSP"), appeal from a judgment entered in favor of Wyoming Steel Fabricators and Erectors, Inc. ("WSFE"). WSP contends the evidence presented did not support a finding that it breached a covenant not to compete with WSFE. Alternatively, if a breach was demonstrated, WSP challenges the district court's calculation of damages. We affirm.

## ISSUES

[¶ 2] This appeal presents two issues:
1. Did the district court err in finding a breach of the covenant not to compete?
2. Did the district court err in awarding damages?

## FACTS

[¶ 3] In 1989, Michael Olson became an employee of WSP, assisting with the sale, fabrication and erection of steel products. He continued that employment for approximately ten years. After a short time spent working elsewhere, Mr. Olson returned to WSP in December 2000. At that time, WSP's sole shareholder, Mr. Trefren, had tired of the steel fabrication business. He intended to move or liquidate WSP's equipment and inventory and to lease the commercial space to a different business. Mr. Trefren hired Mr. Olson to assist in moving the equipment and prepare the building for the new tenant. During this endeavor, Mr. Olson expressed an interest in purchasing WSP, and the two men began discussing that possibility.

[¶ 4] Eventually Mr. Olson and Mr. Trefren reached an agreement that WSP would lease its building and equipment to WSFE, the corporation Mr. Olson formed to purchase WSP. On September 28, 2001, the parties formalized their agreement and executed an "Equipment Lease; Building Lease; Option to Purchase." The agreement gave WSFE the option to purchase the equipment being leased, as well as WSP's goodwill, telephone numbers, and customer lists. The agreement also gave WSFE the option to purchase a covenant not to compete from Mr. Trefren for $10,000.[1]

---

1. Specifically, the agreement provided:
At the closing of the sale of business assets, David [W.] Trefren shall execute a non[-]compete agreement which shall provide his agreement that he will not own or operate any business under the name "Wyoming Steel Products" nor will he own or manage a business in direct competition with [WSFE's] business for a term of three (3) years or within 150´ miles without [WSFE's] written consent.

David [W.] Trefren shall retain the right to be employed by any company or individual regardless of whether such company or individual competes with [WSFE's] business. WSP retains the right to dispose of any of the equipment, real property and/or business assets that are the subject hereof that are not purchased by [WSFE] and any of its or their other property.

[¶ 5] WSFE exercised its purchase option, and the parties entered into a purchase agreement on June 13, 2002. The purchase included the equipment previously identified in the lease, WSP's telephone numbers, customer lists, and goodwill, and a covenant not to compete ("non-compete covenant") signed by Mr. Trefren. The non-compete covenant provided, in pertinent part:

1. Covenant Not to Compete; Term; Geographic Area. For the purpose of further protecting the Covenantee and its business, Covenantor agrees that, during the term of this Covenant, he will not own or manage a business in direct competition with Covenantee's business as is presently being conducted by Covenantee for a term of three (3) years from the date hereof and within 150 miles of Cheyenne, Wyoming, without Covenantee's written consent. . . .

Covenantor further agrees that, during the term of this Covenant, he will not use the name, "Wyoming Steel Products" in any manner that directly competes with Covenantee's business as is presently being conducted by Covenantee without Covenantee's written consent. Covenantor or that corporation owned by him, WSP Steel, Inc., the owner of all rights to such name, may use such name as the name of an operating entity for Covenantor's business activity of the sale of its existing inventory and equipment.

[¶ 6] WSFE continued to lease the building from WSP until April of 2004. The building was one of several leased buildings located on the WSP premises—a large commercial lot enclosed by a chain link fence. At all times pertinent to this appeal, a large sign reading "Wyoming Steel Products" in red capital letters spanned the sole entry to the WSP premises. After WSFE vacated the building, WSP leased the building to another steel fabrication business.

[¶ 7] Several months later, WSP initiated this case by filing a complaint in the district court, alleging that WSFE owed back rent, wrongfully removed items of personal property and fixtures, and caused damage to the leased building. WSFE counterclaimed, asserting that WSP had breached the non-compete covenant.

[¶ 8] A bench trial was held. The district court found that WSP was not entitled to recover on any of its claims. WSFE prevailed on its counterclaim, and the district court awarded damages of $4,200. WSP appealed, challenging only the district court's decision in favor of WSFE on the counterclaim.

## STANDARD OF REVIEW

[¶ 9] We review the district court's finding that WSP breached the non-compete covenant as a bench trial finding of fact, upheld unless it is clearly erroneous. *Hopper v. All Pet Animal Clinic, Inc.,* 861 P.2d 531, 538 (Wyo.1993). "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court . . . is left with the definite and firm conviction that a mistake has been committed." *Id.* The same standard applies to the calculation of damages. *Alexander v. Meduna,* 2002 WY 83, ¶ 35, 47 P.3d 206, 217 (Wyo. 2002).

## DISCUSSION

[¶ 10] WSP does not challenge the validity or enforceability of the non-compete covenant. It contends, however, that the undisputed facts do not demonstrate that the covenant was breached or that WSFE suffered damage as a result. According to WSP, the district court's findings to the contrary are clearly erroneous.

### Breach

[¶ 11] The district court issued the following findings in support of its conclusion that WSP breached the non-compete covenant:

73. Immediately after [WSFE] vacated the building a new steel fabrication and erection business was started in that same location.

74. The parties both agreed that a large sign containing the name "Wyoming Steel Products" continues to hang over the entrance to the . . . building.

75. The sign was hanging in that location when [WSFE] occupied the building.

76. [WSFE] asked [WSP] to remove the sign while it was occupying the building but was refused.

77. [WSFE] renewed its request to have the sign removed when the building was occupied by the new steel business but was again refused.

. . .

81. The Covenant unambiguously provides that although [Mr. Trefren] remains the "owner" of such name for selling its then existing inventory and equipment, he agreed not to *"use the name **in any manner**"* that directly competes with [WSFE's] business.

82. The sign displaying the name "Wyoming Steel Products" hanging over the entrance to the building constitutes use of the name.

83. As that sign is hanging over the entrance to a business that provides steel fabrication and erection services to the public, this use is in direct competition with [WSFE's] business and is in contravention of the Covenant signed by [Mr. Trefren].

84. The use of the name Wyoming Steel Products by [WSP] in this manner exceeds the use allowed in the Covenant for the sale of existing inventory and equipment.

85. The breach occurred in April of 2004 when the Covenant was in full force and effect and continued until the Covenant expired according to its terms on June 13, 2005.

86. [WSFE] has proved by a preponderance of the evidence that [WSP] breached the Covenant.

(Emphasis in original.)

■ [¶ 12] WSP argues that neither the existence of the sign nor the leasing to a competing steel products business violated the non-compete covenant. We agree that vestiges of signage from the previous business, alone, may not be enough to show direct competition. There is also authority supporting WSP's argument that merely leasing to a competitor does not violate a non-compete agreement. *See, e.g., Dawson v. Temps Plus, Inc.,* 337 Ark. 247, 987 S.W.2d 722, 729 (1999) (finding no breach where tenant is stranger to the contract). However, we are not concerned whether either of these things, in isolation, might amount to direct competition.

[¶ 13] The district court attributed significance to both the sign and the lease arrangement with WSFE's competitor and considered the combined effect in light of the specific restraint imposed upon use of the name. In this case, the name "Wyoming Steel Products" takes on a special significance with respect to the non-compete covenant. In addition to refraining from direct competition in a general sense, WSP expressly promised not to use the "Wyoming Steel Products" name **"in any manner** that directly competes" with WSFE's business.

■ [¶ 14] The goodwill of the business is often a more important aspect of the purchase of a business than the physical assets. *Weaver v. Ritchie,* 197 W.Va. 690, 478 S.E.2d 363, 368 (1996). An agreement by the seller to refrain from competition with the buyer can be critical to the transfer of goodwill. *Id.* "A transfer of goodwill cannot be effectively accomplished without an enforceable agreement by the transferor not to act so unreasonably to diminish the value of that which he is selling." *Id.*

[¶ 15] In purchasing the business, WSFE desired the goodwill of "Wyoming Steel Products," but WSP did not want to part with the name. This was the apparent basis for the non-compete covenant, and the reason separate consideration of $10,000 was given. Despite WSFE's specific request to have the sign removed, WSP refused to remove the sign while leasing the space to a competitor. As a result, WSFE's competitor was in a position to benefit from WSP's goodwill. This was the very situation WSFE sought to prevent. Accordingly, when the "Wyoming Steel Products" name was displayed in association with a competitor, WSFE was denied the benefit of its bargain.

[¶ 16] WSP also asserts that there was no breach because the duty to remove "Wyoming Steel Products" signage belonged to WSFE. The Purchase Agreement included the following provision:

8. USE OF NAMES; NOTICE TO PUBLIC AND CUSTOMERS. Seller shall continue to cooperate with Purchaser's efforts to inform the public and its customers and vendors of the name under which Purchaser has and shall conduct its business. Purchaser shall conduct such business under the name of Wyoming Steel Fabricators and Erectors, Inc. and both Sellers and Purchasers shall take every reasonable effort to correct any misuse or misperception as to such business name by others. Purchaser shall remove the name "Wyoming Steel Products" from all vehicles and equipment used by Purchaser in the conduct of its business.

WSFE removed signage from all the vehicles and equipment it purchased. It also replaced a Wyoming Steel Products sign located down the street with a WSFE sign. WSP argues that this conduct demonstrates knowledge and acceptance of the obligation WSFE had to replace all signage pursuant to the above-quoted provision of the Purchase Agreement. We disagree.

[¶ 17] First, the provision of the Purchase Agreement applies only to equipment and vehicles. WSP's attempt to extend the scope of this provision is unsupported by the language of the agreement. It clearly does not impose any obligation upon WSFE to remove signage on WSP's premises—property that was not included in the purchase and was not owned or controlled by WSFE. To the extent that WSFE was required to make a reasonable effort concerning the large sign, it did so when it requested that Mr. Trefren remove the sign. Second, WSP's contention that WSFE should have, or even could have, changed the large sign on WSP's premises is not borne out by the record. The sign change WSFE did make was down the road, not on WSP premises. Even so, WSP vehemently objected to the change. Given WSP's strong opposition to the sign change off the premises, WSFE could not have reasonably felt empowered or authorized to remove the "Wyoming Steel Products" sign at the entrance to WSP's premises. The district court's finding that WSP breached the covenant to not compete was not clearly erroneous.

## Damages

[¶ 18] The district court determined that WSFE was entitled to $4200 as damages for WSP's breach of the non-compete. This amount was calculated as 15/36 of $10,000. The ratio represents the number of months the district court found WSP in breach of the non-compete, divided by the three-year term of the non-compete. The district court then applied that ratio to the consideration WSFE paid for the non-compete to arrive at damages totaling $4200.

[¶ 19] In Wyoming, damages must be proven with a reasonable degree of certainty, but proof of exact damages is not required. *Hopper,* 861 P.2d at 547. A district court may not speculate or conjecture about the proper amount of damages. *Id.* Damages should compensate for an individual's loss and no more. *Id.* WSP challenges the district court's award of damages, asserting WSFE failed to prove damages to a reasonable degree of certainty.

[¶ 20] WSP claims that WSFE did not present any evidence of lost profits, thereby making any award of damages unsupported. In support of its argument, WSP points to our decision in *Hopper,* 861 P.2d at 547–548. *Hopper* involved a non-compete agreement ancillary to an employment relationship. We recognized that lost profits may be a proper element of recovery for breach of a covenant not to compete. *Id.* Calculation of lost profits depends upon proof that: (1) net profits were lost; (2) the amount of those profits can be determined with a reasonable degree of certainty; and (3) the defendant's breach was the proximate cause of the lost profits. *Id.,* 861 P.2d at 548.

[¶ 21] The record is clear that WSFE did not prove these four elements of lost profits. However, nothing in *Hopper* requires proof of lost profits as the sole proof of damages. As a type of consequential damages, lost profits are merely one measure of damages. *See* Restatement (Second) of Contracts § 347 (1981). WSFE did not seek consequential damages, so it is not surprising that it did not present evidence of lost profits.

[¶ 22]   Instead, the district court relied upon a different theory of damages, i.e., WSFE's expectation interest in performance of the agreement.  An "injured party has a right to damages based on his expectation interest as measured by ... the loss in the value to him of the other party's performance caused by its failure or deficiency."  Restatement (Second) of Contracts, *supra,* § 347.  We find the district court had sufficient evidence to value WSFE's expectation interest in performance of the non-compete covenant.

[¶ 23]   WSFE paid $10,000 for the non-compete agreement, ancillary to the purchase of the "Wyoming Steel Products" business. In lieu of the right to use the name to realize the goodwill of the business, WSFE obtained the covenant to protect against the name "Wyoming Steel Products" being used by someone else to compete with the business WSFE purchased.  The parties negotiated a price of $10,000 for a three-year term.  These terms fairly reflect the value to WSFE of full performance of the non-compete covenant and provided the district court with a reasonable, ascertainable measure of the damage caused by WSP's failure to meet that expectation.  Accordingly, the award of damages was not clearly erroneous.

[¶ 24]   Affirmed.