Douglas A. MOORE,
Appellant (Plaintiff),

v.

The CONTINENTAL INSURANCE
COMPANY, Appellee (Defendant).

No. 90–241.

Supreme Court of Wyoming.

June 21, 1991.

Glenn E. Smith (argued), Glenn E. Smith & Associates, Cheyenne, and Peter J. Feeney, Casper, for appellant.

Ann M. Rochelle (argued), Williams, Porter, Day & Neville, Casper, for appellee.

Before URBIGKIT, C.J., and THOMAS, CARDINE, MACY and GOLDEN, JJ.

CARDINE, Justice.

Appellant, Douglas A. Moore (Moore), seeks review of a summary judgment in favor of appellee, The Continental Insurance Company (Continental). Continental provided Moore with insurance on his home. On January 3, 1988, the policy was canceled for failure to pay premiums. Moore claimed that Continental wrongfully canceled his insurance coverage and was, therefore, liable to him for fire damage to his home that occurred on May 2, 1988.

We affirm, holding that Moore could have easily avoided the damages he suffered and, therefore, Continental cannot be held liable for them.

## ISSUES

Moore states these issues:

"I. When the last day upon which a premium payment may be made to avoid cancellation of a homeowner's policy falls upon a Sunday or legal holiday, is an insurer entitled to cancel the policy after receiving the premium payment on the

**1297**

first business day following a Sunday or legal holiday?

"II. Was the premium payment received by the appellee on January 4, 1988, under the 'mailbox rule' deemed to have been received on the date of mailing, December 28, 1987?

"III. Did Continental adopt the United States Postal Service as its agent and, if so, was the premium payment mailed in due time to reasonably reach Continental by the date of cancellation?

"IV. Is the appellee's contract of insurance ambiguous with regard to whether there was a nonpayment of premium by the 'due date'?

"V. Is appellee estopped to deny or has appellee waived the right to claim proper cancellation of the appellant's policy?

"VI. Are there issues of material fact in this proceeding which should have precluded the district court from granting the appellee's motion for summary judgment?"

Continental considers the sole issue to be whether it properly canceled Moore's homeowner's policy in January 1988. Implicit also in their brief and arguments is the contention that Continental could not, under any theory, be held liable for the damages sustained by Moore.

## FACTS

The facts of this case are, at once, simple and yet terribly complicated. Following is a chronology of pertinent facts.

Continental issued a homeowner's policy to Moore. The policy stated that coverage began on June 10, 1986, and was to continue until June 10, 1987. Moore opted to pay premiums in installments. He made a down payment of $140.00, and expected to be billed by Continental for the remainder of the required premiums. Moore received a billing in the amount of $43.00 dated July 18, 1986, which was not paid.

A statement of account was sent to Moore by Continental dated August 19, 1986. It required payment to Continental in the amount of $113.00, not later than the date shown (that date is not visible on the exhibit, but testimony established that payment was due 21 days after the billing date). That billing also contained this notation: "Please be advised that your homeowner's policy * * * is in jeopardy of cancellation. It will be necessary for us to institute cancellation proceedings unless at least the minimum amount due is received by the date shown below." The quoted notice, as well as all other quoted notices which appear below, are computer generated—not the work of human hands. This bill was not paid either.

By notice dated September 17, 1986, Continental informed Moore that his homeowner's policy was canceled for non-payment of premiums: "This policy is hereby cancelled in accordance with its terms, effective 12:01 pm standard time on the cancellation date shown above [October 4, 1986] due to non-payment of premium amount billed." The billing which accompanied this notice indicated that $108.00 was due. Moore did not receive a bill for September 1986, because of the cancellation notice.

Moore submitted a payment to Continental in late September 1986, which was recorded by Continental in its records on October 8, 1986. Continental's procedures provided that seven days was tacked on to the cancellation date given to customers, but that was not "publicized" because, if it were, customers, "are going to wait." Continental's employee speculated that customers probably would assume their payments were received on time and, therefore, cancellation did not take place. By notice dated October 9, 1986, Moore was informed: "Please be informed that the notice which we sent to you cancelling or terminating the policy * * * is recalled and that said notice is void and of no effect. We hereby reinstate the described policy with the same force and effect as if the said cancellation or termination notice had not been sent."

Moore had not been billed for September 1986, but in October he was billed for both September and October. This billing was not paid.

In November 1986, another warning was issued by Continental to Moore, but not a cancellation notice. Moore issued a check to Continental for $319.50, which was dated December 9, 1986, and which was entered on Continental's records on December 16, 1986. Although this payment was $2.50 short of the total due for the balance of the policy year, Continental wrote off this small amount and credited Moore with being paid up through the end of the policy year (June 10, 1987).

In April 1987, Moore was sent a renewal notice indicating the amount of premium due to renew the policy. By notice dated June 21, 1987, Moore was informed: "Notice is hereby given that this policy expired at 12:01 pm standard time on the expiration date shown above [June 10, 1987]. The policy terminated at that time and all liability of the company under said policy ceased at and from that time." Moore sent Continental a check, which was dated June 23, 1987, and entered in their accounting system on June 30, 1987. The amount of this payment, though less than the amount due, was within tolerances for Continental and the policy was renewed. By notice dated July 1, 1987, Moore was informed: "Please be informed that the notice which we sent to you cancelling or terminating the policy described above is recalled and that said notice is void and of no effect. We hereby reinstate the described policy with the same force and effect as if the said cancellation or termination notice had not been sent."

Moore did not make the next payment due in July 1987. In August 1987, he received a billing for both July and August with a warning message.

By notice dated September 17, 1987, Moore was informed: "This policy is hereby cancelled in accordance with its terms, effective 12:01 pm standard time on the cancellation date shown above [October 4, 1987] due to non-payment of premium amount billed." Moore sent Continental a check dated September 25, 1987, which was posted by Continental on October 6, 1987. By notice dated October 7, 1987, Moore was then informed that: "Please be in-

formed that the notice which we sent to you cancelling or terminating the policy described above is recalled and that said notice is void and of no effect. We hereby reinstate the described policy with the same force and effect as if said cancellation or termination notice had not been sent." Once again, because of the cancellation notice, Moore received no September billing. He was billed in October 1987, but did not pay. And, again as in the past, he was billed in November with a warning.

By notice dated December 17, 1987, Moore was informed: "This policy is hereby cancelled in accordance with its terms, effective 12:01 pm standard time on the cancellation date shown above [January 3, 1988] due to non-payment of premium amount billed."

Moore sent Continental a check dated December 28, 1987, in the amount of $264.00—a sum sufficient to pay through the end of the policy year, June 10, 1988. Continental posted that check on January 4, 1988, negotiated it, and sent a refund of $224.00 to Moore on January 4, 1988, which represented the excess over what Moore owed Continental up to the January 3, 1988 cancellation date. Continental explained that they had reprogrammed their computer to delete the extra time that previously had been afforded to customers. Continental's employee speculated that Moore would not have known that, nor would he have known he had been afforded additional time in the past. Although Moore had made several claims against his policy, the justification for cancellation given by Continental was that premiums were not paid when due. Continental made it clear that if the payment had been received on or before January 3, 1988, the policy would have been renewed. January 1, 1988 was a holiday, January 2, 1988, was a Saturday, and January 3, 1988, was a Sunday. Moore did not receive a notice reinstating his policy as he had on past occasions.

Bonnie Fulton was Moore's secretary and, in fact, had taken care of all the transactions described above for Moore. No question is raised in this case that notices to her were also notices to Moore. In

January 1988, she received the refund check from Continental in the amount of $224.00. The check did not indicate what it was for, so Bonnie called Moody Insurance, the local agent for Continental, to find out. She was told that the homeowner's policy had been canceled. Bonnie asked Moody Insurance to see if another company would pick up the policy. She did not remember talking with Moody again until she called them on May 2, 1988, to tell them that Moore's home had been seriously damaged by fire in excess of $100,000. Moody claimed it informed Bonnie that it had no carriers which would pick up the policy and she should look elsewhere for insurance. We note at this juncture that, although Moody Insurance was originally a party to this action, it was dismissed from the case early on. There are no issues in this appeal which relate to Moody Insurance.

## DISCUSSION

A district court, when deciding a motion for summary judgment, does not sit as a fact finder. Nor do we act as a fact finder when we review a summary judgment. Our standard in reviewing summary judgments is this. Summary judgment is only appropriate on a dual finding that there is no genuine issue of material fact and that the prevailing party is entitled to judgment as a matter of law. The record on appeal must be viewed most favorably to the party opposing the motion, giving to him all favorable inferences that may reasonably be drawn from the record. Summary judgment is not appropriate when material issues of fact exist. A fact is material if it would establish or refute one of the essential elements of a cause of action or defense asserted by either party. *Bowlerama, Inc. v. Woodside Realty Co.*, 752 P.2d 1377, 1380 (Wyo.1988).

The district court's decision letter, which is our only clue to the reasoning behind the grant of summary judgment, is set out verbatim for illustrative purposes:

"The above matter has come before the Court upon motions for summary judgment by both sides. The Court finds that there is no genuine dispute as to any

material fact and that defendant is entitled to judgment as a matter of law. "The primary claim of plaintiff is based upon a breach of contract theory. The insurance policy states in unambiguous terms that cancellation can occur for nonpayment of a premium by the date due. The due date is clearly stated on each statement. After plaintiff failed to make premium payments, the subsequent billing established a cancellation date. Defendant has complied with the cancellation requirements of the policy and with Wyoming law regarding notice to plaintiff. The premium arrived after the cancellation date. Defendant then refunded the unearned premium by a check which was cashed by plaintiff. The agent for plaintiff knew that coverage had been cancelled and that insurance should be obtained from somewhere else.

"Plaintiff argues that coverage would have continued if the payment had been made by the Sunday upon which it was due, that the payment was made by the next business day, and that coverage thus was still in effect. The statute and rule cited from Wyoming admittedly do not apply to insurance policies. Plaintiff also cites cases applying the 'mailbox' rule, so that the premium is considered to be paid at the time of mailing. I do not have any quarrel with the results of those cases under the particular facts involved in those situations. However, the circumstances are different here where the cancellation provisions of the policy are clear, where they were followed by the defendant, where we do not have a statute providing otherwise, and where plaintiff accepted the return of premium and knew that coverage was no longer in effect.

"Plaintiff also alleges that defendant violated Wyoming Statutes section 26–35–102 by cancelling the policy before return of the unearned premium. The statute does not apply here where there was no unearned premium at the time of cancellation.

"Plaintiff also alleges waiver and estoppel. Waiver is the intentional relinquish-

ment of a known right. There is no evidence of waiver in this case. Also, the policy provides that any waiver must be in writing. As for estoppel, there is no showing that the plaintiff relied upon particular conduct by the defendant. Defendant made it clear to plaintiff what the cancellation provisions and dates were. Plaintiff did not comply and defendant notified plaintiff that the policy was cancelled. There was no reason for plaintiff to believe that the policy provisions were to the contrary or that coverage continued.

"Concerning allegations of fraud and negligence, there is no evidence of misrepresentations by defendant. There is no showing of a duty owed by defendant to plaintiff which was breached by defendant to serve as the basis of a negligence action."

Moore raises many issues which likely would require consideration by a fact finder, thus precluding summary judgment were a finding necessary as to those issues. For instance, it is likely, though we do not decide the issue definitively, that whether Continental was required to accept the premium payment, which arrived on the Monday following New Year's Day weekend, is a question that could require the fact finder to decide if Moore acted reasonably, under the terms of his contract with Continental and based upon past experience, in mailing a premium payment on December 28, 1987, that needed to arrive by January 3, 1988. *See* 6 Couch on Insurance 2d § 32:127 (Rev. ed. 1985).

Moore claims that his premium payment should have been deemed delivered to Continental when he placed it in the mail on December 28, 1987, or within a reasonable time thereafter. In addition, he asserts Continental adopted the United States Postal Service as its agent, and he mailed the premium payment in time for it to arrive at Continental's offices to beat the deadline. If there was a failure of timely delivery, it was the fault of Continental's agent and not Moore. There is authority to support this proposition, though, again, we do not definitively decide the question as it is presented in this case. *See* 15 Apple-

man, Insurance Law and Practice § 8559 (Rev. ed. 1985). The question, if it were to be decided, would likely have to be referred to a fact finder.

Moore also claims that exactly what the "due date" for premiums was is not clear under the terms of the policy itself and that the course of dealings of over eighteen months between Continental and Moore further obscured what "due date" meant. In this same vein, Moore claims Continental waived the explicit terms of the contract that the policy could be canceled if premiums were not received when due, or should be estopped from defending on that basis, because of the course of dealings between Moore and Continental. Moore contends that Continental's acceptance of his late payment was a forbearance that he could and did rely on. There is authority to support these assertions, though again we do not purport to decide this question. *See* 15 Appleman, Insurance Law and Practice §§ 8551–68; 3A Corbin on Contracts §§ 721–22 (1960). In this regard, these are also questions of fact which would likely have needed the services of a fact finder.

However, it would be useless to present all this evidence to a fact finder if Moore was not entitled to any damages under the circumstances presented by this case. That is exactly the position in which he finds himself. Implicit in the district court's findings was a recognition that Moore knew that his insurance had been canceled, whether that was done wrongfully or not, and that he needed to obtain insurance elsewhere. The record is abundantly clear that he accepted return of unearned premium without complaint. Four months passed during which time he neither objected, inquired or attempted to pay. A party may, in certain instances, be required to mitigate his damages, and whether an injured party has exercised reasonable diligence and care in mitigating damages is for the trier of fact to decide. *Hollon v. McComb*, 636 P.2d 513, 516 (Wyo.1981). And where reasonable minds could not differ with respect to efforts to

mitigate, as here, summary judgment is appropriate.

This case might present a different posture if Moore had been attempting to mitigate his loss by seeking other insurance. Such was not the case, and there is no need to assign the resolution of the mitigation question to a fact finder because the record demonstrates that Moore made no effort to mitigate his damages. Although he was informed in January of 1988 that his homeowner's policy was canceled, he made no effort to either contest the cancellation of his policy or obtain other insurance. Bonnie Fulton testified that she was informed, on behalf of her employer, that the policy was canceled, and that she simply forgot to do anything about it. The first effort Moore made to do anything did not take place until after his home had been damaged by fire.

■ There is a refinement of the mitigation rule which we hold to be applicable here, i.e., Restatement, Second, Contracts § 350 (1981):

"(1) Except as stated in Subsection (2), damages are not recoverable for loss that the injured party could have avoided without undue risk, burden or humiliation.

"(2) The injured party is not precluded from recovery by the rule stated in Subsection (1) to the extent that he has made reasonable but unsuccessful efforts to avoid loss."

The rationale of this principle, which differentiates it from mitigation in a more general sense, is that damages which the plaintiff might have avoided with reasonable effort and without undue risk, expense, or humiliation are either not caused by the defendant's wrong or need not have been, and, therefore, are not to be charged against him. 11 Williston on Contracts § 1353 (3rd ed. 1968); 5 Corbin on Contracts § 1039 (1964). For instance, in the case *Coury Bros. Ranches, Inc. v. Ellsworth*, 103 Ariz. 515, 446 P.2d 458, 463 (1968) it was held:

"The record is therefore clear that Ellsworth brought his sheep back to the Coury Ranch, knowing that the feed was insufficient and improper. It does not reflect that he made any effort to obtain additional feed, either through other pasturing or supplemental feed such as hay, until death from bloat, starvation and disease was imminent or had occurred. Under these circumstances in the language of Justice Cardozo in *McClelland v. Climax Hosiery Mills, supra* [252 N.Y. 347, 169 N.E. 605, 609 (1930)], the chain of causation was broken and the loss resulting thereafter was 'suffered through his own act.'"

Moore may have been able to have his policy renewed had he demanded such from Continental and tendered the premiums which had been refunded to him. Moore may have had a remedy by way of an action for reinstatement, or for the increased cost of other insurance. *See* Annotation, *Remedies and measure of damages for wrongful cancellation of liability and property insurance*, 34 A.L.R.3d 385 (1970). Here, however, the record is undisputed that Moore took no action to avoid the loss which he seeks to recover from Continental. Almost four months after Moore was aware that the insurance on his home had been canceled, it was damaged by fire. It was only then that Moore undertook to seek recovery from Continental for wrongful termination of his insurance policy. The loss for which Moore seeks to recover damages from Continental occurred through his own act, or failure to act, and Continental cannot be held liable for those damages.

The judgment of the district court is affirmed.