# IN THE SUPREME COURT, STATE OF WYOMING

## 2024 WY 3

OCTOBER TERM, A.D. 2023

January 11, 2024

HACKER OIL, INC., a Wyoming
corporation,

Appellant
(Defendant),

v.

SCHERRI HACKER,

Appellee
(Plaintiff).

S-23-0109

*Appeal from the District Court of Goshen County*
*The Honorable Michael K. Davis (Retired Justice), Judge*

*Representing Appellant:*
    James A. Eddington, James A. Eddington, P.C., Torrington, Wyoming.

*Representing Appellee:*
    James R. Salisbury, The Salisbury Firm, P.C., Cheyenne, Wyoming.

*Before FOX, C.J., and BOOMGAARDEN, GRAY, and FENN, JJ., and BLUEMEL, D.J.*

NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.

**BLUEMEL, Judge.**

[¶1]    Hacker Oil, Inc., paid the premiums on a $250,000 whole life insurance policy on its employee James Hacker.  The policy was intended as a "split-dollar arrangement," which, upon Mr. Hacker's death, would have reimbursed Hacker Oil for the paid premiums.  Then, the split-dollar arrangement was supposed to distribute the remainder of the death benefits to Mr. Hacker's beneficiary, his wife—Scherri Hacker.  After Mr. Hacker's death, Hacker Oil submitted a claim on the policy, and, though it had only remitted $55,048 for premium payments, it received $125,000 and half the interest that had accrued under the policy.

[¶2]    Ms. Hacker brought a conversion claim against Hacker Oil.  Hacker Oil countered that Ms. Hacker failed to mitigate her damages by pursuing litigation.  The district court held that mitigation did not apply and that Hacker Oil had converted $70,372.68—the difference between the amount it received ($125,000 insurance policy proceeds plus policy interest) and the amount it was entitled to receive ($55,048 premiums paid).  Hacker Oil appealed.  We affirm.

### *ISSUE*

[¶3]    Did the district court err when it rejected Hacker Oil's argument that Ms. Hacker failed to mitigate her damages by withholding her signature from a letter agreement and by asserting a cause of action for conversion against Hacker Oil?

### *FACTS*

[¶4]    In August 1989, New York Life Insurance Company issued a $250,000 whole life insurance policy to James S. Hacker.  Jeffrey Marsh, an agent with New York Life, sold the policy.  The policy was implemented as a "split-dollar arrangement," which assigned to Hacker Oil, Inc., the responsibility to pay the premiums for Mr. Hacker and allowed Mr. Hacker to designate beneficiaries at any time during his life.  In February 2000, Mr. Hacker changed the beneficiary of the life insurance policy to his wife, Scherri Hacker.  That beneficiary form was not correctly completed.  Over the years, Hacker Oil remitted $55,048 in premium payments on the policy.

[¶5]    Mr. Hacker passed away on April 3, 2012.  Ms. Hacker submitted a claim on April 26, 2012.  Mr. Marsh soon discovered that the beneficiary designation precluded New York Life from distributing the proceeds as Mr. Hacker had intended.  However, if Hacker Oil and Ms. Hacker agreed in writing, New York Life would distribute the premiums to Hacker Oil and the balance of the policy to Ms. Hacker.  Mr. Marsh prepared a letter agreement and Ms. Hacker declined to sign it before Hacker Oil did.  The president of Hacker Oil signed the letter on May 10, 2012.

1

[¶6]    Between May 11 and May 14, 2012, Mr. Marsh attempted to contact Ms. Hacker to get her signature on the letter, but he never reached her.  His communications did not advise Ms. Hacker of a deadline to sign the letter.  A little more than a week after Hacker Oil signed the letter, New York Life directed Mr. Marsh to submit Ms. Hacker's claim for processing.  The claim was submitted on May 21, 2012.  After this, Ms. Hacker met with Mr. Marsh and he informed her that it was too late to sign the letter and that the claim had already been submitted to New York Life.  On May 30, 2012, Mr. Marsh presented Ms. Hacker with a check for $125,420.68—half of the policy proceeds plus policy interest.  Believing she was entitled to more, Ms. Hacker refused to accept the check.

[¶7]    On June 7, 2012, Hacker Oil rescinded its agreement to the letter and submitted its claim on the policy.  New York Life issued, and Hacker Oil accepted, a check for $125,420.68, which represented $125,000.00 in death benefits under the policy and $420.68 in interest.

[¶8]    Ms. Hacker brought a claim against Hacker Oil for conversion.  Hacker Oil asserted the affirmative defense that Ms. Hacker failed to mitigate damages.  After trial, the district court held that Hacker Oil converted to its own use $70,372.68, one-half of the policy proceeds plus interest minus the premiums paid, $55,048.00.  Neither party challenges the court's decision on the conversion claim.  The court held that mitigation did not apply to Ms. Hacker's choice to pursue litigation.  Mitigation is the only issue on appeal.

### STANDARD OF REVIEW

[¶9]    The court's factual "findings are presumptively correct, . . . and our review does not entail re-weighing disputed evidence." *Fremont Homes, Inc. v. Elmer*, 974 P.2d 952, 958 (Wyo. 1999) (citing *Springer v. Blue Cross & Blue Shield of Wyo.*, 944 P.2d 1173, 1176 (Wyo. 1997)).  "After a bench trial, we review the district court's . . . legal conclusions de novo." *Aimone v. Aimone*, 2023 WY 43, ¶ 19, 529 P.3d 35, 41 (Wyo. 2023), *reh'g denied* (June 6, 2023) (citations omitted).  We review whether the mitigation of damages is applicable in this matter de novo.

### DISCUSSION

[¶10]  Hacker Oil claims that Ms. Hacker failed to mitigate her damages when she refused to sign the letter agreement which provided that Hacker Oil would be reimbursed for the paid premiums and the balance of the policy proceeds would be distributed to Ms. Hacker.  Hacker Oil argues that by signing the letter, Ms. Hacker would have gained the same result that she obtained after litigating the conversion claim.

[¶11]  "It is of course well established that one who is injured by the wrongful act of another must exercise reasonable care and diligence to . . . minimize the resulting damage." *Asbell Bros. v. Nash-Davis Mach. Co.*, 382 P.2d 57, 59 (Wyo. 1963).  "Damage-mitigation

2

principles apply to conversion actions." 18 Am. Jur. 2d *Conversion* § 134, at 243 (2015). The rationale of mitigation "is that damages which the plaintiff might have avoided with reasonable effort and without undue risk, expense, or humiliation are either not caused by the defendant's wrong or need not have been, and, therefore, are not to be charged against him." *Moore v. Cont'l Ins. Co.*, 813 P.2d 1296, 1301 (Wyo. 1991) (citations omitted).

[¶12]   The "[d]octrine of 'mitigation of damages,' sometimes called doctrine of avoidable consequences, imposes on [an] injured party duty to exercise reasonable diligence and ordinary care in attempting to minimize his damages after injury has been inflicted . . . ." *UNC Teton Expl. Drilling, Inc. v. Peyton*, 774 P.2d 584, 592 (Wyo. 1989) (quoting Black's Law Dictionary 904 (5th ed. 1979)).   Where a defendant has "committed an actionable wrong," the law precludes recovery for harm resulting from the "the injured person's lack of care." *S-Creek Ranch, Inc. v. Monier & Co.*, 509 P.2d 777, 782 (Wyo. 1973) (quoting *Southport Transit Co. v. Avondale Marine Ways, Inc.*, 234 F.2d 947, 952–54 (5th Cir. 1956)).   Public policy discourages people from wasting their physical or economic resources.  *Id.*   However, there is no "duty," per se, to mitigate, and "the doctrine of avoidable consequences is not considered a defense at all."  *Id.* (citations omitted).

[¶13]   "It is sometimes said that it is the 'duty' of the aggrieved party to mitigate damages, but this is misleading because he incurs no liability for his failure to act."  Restatement (Second) of Contracts § 350, cmt. b (Am. Law Inst. 1981).  There is no right of action given against the person who violates the "duty."  Jeffrey K. Riffer & Elizabeth Barrowman, *Recent Misinterpretations of the Avoidable Consequences Rule: The "Duty" to Mitigate and Other Fictions*, 16 Harv. J.L. & Pub. Pol'y 411, 417 (1993) (quoting Charles McCormick, *Handbook on the Law of Damages* § 33, at 128 n. 27 (1935)).

> It is not infrequently said that it is the "duty" of the injured party to mitigate his damages so far as that can be done by reasonable effort on his part.  Since there is no judicial penalty, however, for his failure to make this effort, it is not desirable to say that he is under a "duty[."]

*Id.* (quoting 5 Arthur L. Corbin, *Corbin on Contracts* § 1039, at 242–43 (1964)).   The doctrine of avoidable consequences "applies to the time during which damages are accruing, not to the election of remedies after damages have occurred." *Reed v. Aaacon Auto Transp., Inc.*, 637 F.2d 1302, 1305 (10th Cir. 1981), *overruled on other grounds by Underwriters at Lloyds of London v. N. Am. Van Lines*, 890 F.2d 1112 (10th Cir. 1989).  It is not an affirmative defense to liability; it is an affirmative defense to reduce the amount of damages a plaintiff is entitled to after liability has been found.  *Bader v. Mills & Baker Co.*, 28 Wyo. 191, 201 P. 1012, 1014–15 (1921); *Buhring v. Tavoletti*, 905 N.E.2d 1059, 1065 (Ind. Ct. App. 2009).

[¶14]  Hacker Oil relies upon *Lewis v. Cmty. First Nat'l Bank, N.A.*, 2004 WY 152, ¶ 7, 101 P.3d 457, 459 (Wyo. 2004), to support its argument that Ms. Hacker failed to mitigate her damages.  In *Lewis*, the plaintiff had defaulted on a personal commercial loan, so his bank transferred funds from his company checking account to cover the past-due personal loan. *Id.* ¶ 3, 101 P.3d at 458.  The plaintiff complained to the bank, and the bank offered to return the funds to the company account. *Id.* ¶ 4, 101 P.3d at 458.  The plaintiff refused the offer because returning the funds would have left his loan in default.  *Id.*  Instead, he filed a claim against the bank for breach of the duty of good faith owed to his company. *Id.*  Affirming summary judgment, the court held that the plaintiff had not acted reasonably to mitigate his company's damages and the company would have suffered no damages if he had accepted the return of the funds on its behalf.  *Id.* ¶ 12, 101 P.3d at 460.  The fact that the return of the funds would have left his personal loan in default was damage attributable to the plaintiff's own failure to make the loan payments.

[¶15]  Hacker Oil claims that, like the plaintiff in *Lewis*, Ms. Hacker had an opportunity to be made whole before she filed her complaint—she could have signed the explanation letter, gained the death benefits to which she was entitled, and avoided litigation.  Unlike *Lewis*, all those opportunities occurred before the conversion.[1]  Once Hacker Oil committed the actionable wrong of conversion, public policy required Ms. Hacker to exercise reasonable diligence to steer clear of avoidable consequences.  Pursuing her rights to the converted property does not fall within the definition of the doctrine of avoidable consequences.

[¶16]  When Hacker Oil converted her property, Ms. Hacker rightfully brought a claim and asserted her rights.  The damage had occurred, and she did nothing to warrant any reduction in the amount to which she was entitled.  She did not fail to mitigate her damages.

## *CONCLUSION*

[¶17]  The district court properly held that mitigation did not apply in this case.  Litigation was inevitable because Hacker Oil's actions precluded Ms. Hacker from accepting the terms of the explanation letter and then Hacker Oil converted her property.  Ms. Hacker's decision to litigate caused no damage, and the doctrine of mitigation was inapplicable.  Ms. Hacker had no duty to mitigate or avoid damages caused by Hacker Oil's conversion.

---

[1] Unlike the plaintiff in *Lewis* who could have accepted the bank's offer to replace the money in his business account after it had been transferred, Ms. Hacker was not offered an opportunity to be made whole after the conversion took place.  Ms. Hacker was not given an opportunity to sign the explanation letter after Hacker Oil had signed it.  Mr. Marsh was unsuccessful in reaching Ms. Hacker prior to the deadline to submit the claim to New York Life, and his pre-deadline communications did not inform her of the deadline. Hacker Oil then rescinded its agreement to the letter. Ms. Hacker's only recourse was to pursue litigation because of Hacker Oil's conversion. Finally, unlike the plaintiff in *Lewis* who sought damages for bad faith, Ms. Hacker sought no damages beyond the death benefits to which she was entitled from the beginning.

[¶18]  Affirmed.