# IN THE SUPREME COURT, STATE OF WYOMING

## 2025 WY 25

**OCTOBER TERM, A.D. 2024**

**March 4, 2025**

SAMUEL ROBINSON,

Appellant
(Plaintiff),

and

KARI L. WINFIELD,

Appellant
(Defendant),

v.

VERNON BLACK,

Appellee
(Defendant/Plaintiff).

S-24-0199

*Appeal from the District Court of Fremont County*
*The Honorable Kate G. McKay, Judge*

*Representing Appellants:*
    Vance Countryman, Countryman Law, P.C., Lander, Wyoming.

*Representing Appellee:*
    No appearance.

*Before FOX, C.J., and BOOMGAARDEN, GRAY, FENN, and JAROSH, JJ.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third.  Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**GRAY, Justice.**

[¶1]    Vernon Black sued Kari Winfield for breach of contract; Ms. Winfield and Samuel Robinson asserted claims for unjust enrichment against Mr. Black. After a bench trial, the district court found that none of the parties established their claims. Ms. Winfield and Mr. Robinson appeal, arguing that the district court erred when it denied their claims for unjust enrichment. Because the district court clearly erred when it determined that Ms. Winfield and Mr. Robinson did not establish their claims for unjust enrichment, we reverse and remand for entry of judgment in favor of Ms. Winfield and Mr. Robinson.

## *ISSUES*

[¶2]        1.    Did the district court abuse its discretion when it allowed Mr. Black to use an exhibit that had not been produced during discovery?

2.    Did the district court clearly err when it found that Ms. Winfield and Mr. Robinson had not established their unjust enrichment claims?

## *FACTS*

[¶3]    Prior to the events in this case, Ms. Winfield worked either full time or as a day laborer for Mr. Black. At some point in time, Ms. Winfield borrowed money from Mr. Black to pay for legal expenses. She did not repay the money and Mr. Black secured a judgment against her for $25,828.52, including interest.

[¶4]    Between April 2020 and July 2021, Ms. Winfield and her boyfriend, Mr. Robinson, did various types of work for Mr. Black. They assisted Mr. Black with numerous projects. Those projects included constructing fences and holding pens; helping brand Mr. Black's cattle; traveling round trip from Riverton to Nebraska to pick up cake (feed) for Mr. Black; boarding and feeding Mr. Black's livestock; and catering for Mr. Black's ranch workers. Mr. Black did not compensate Ms. Winfield or Mr. Robinson or credit Ms. Winfield's debt for the work performed.

[¶5]    In August 2022, Mr. Black filed a complaint against Ms. Winfield alleging breach of contract.[1] Ms. Winfield counterclaimed, asserting Mr. Black was unjustly enriched by the labor she performed on his behalf. Mr. Robinson filed a separate complaint against Mr. Black, asserting Mr. Black was unjustly enriched by the labor he performed. The district court consolidated the two cases and held a two-day bench trial. After the trial, the district court found none of the parties had established their claims. Relevant here, the

---

[1] Mr. Black did not prevail before the district court and his claims are not at issue in this appeal.

1

court held Ms. Winfield's and Mr. Robinson's unjust enrichment claims failed because they did not show they reasonably notified Mr. Black that they expected to be paid for their labor and neither Ms. Winfield nor Mr. Robinson proved damages. Ms. Winfield and Mr. Robinson timely appealed. Additional facts are discussed below.

## *STANDARD OF REVIEW*

[¶6]   We review a district court's decisions concerning "the admissibility of evidence, controlling discovery, and selecting the proper means of sanctioning a discovery violation" for an abuse of discretion. *Downs v. Homax Oil Sales, Inc.*, 2018 WY 71, ¶ 19, 421 P.3d 518, 523 (Wyo. 2018) (citing *In re Paternity of HLG*, 2016 WY 35, ¶ 7, 368 P.3d 902, 904 (Wyo. 2016); *Roemmich v. Roemmich*, 2010 WY 115, ¶ 22, 238 P.3d 89, 95 (Wyo. 2010)). "[A]s long as there exists a legitimate basis for the trial court's ruling, that ruling will not be disturbed on appeal." *Downs*, ¶ 19, 421 P.3d at 523 (quoting *Wise v. Ludlow*, 2015 WY 43, ¶ 42, 346 P.3d 1, 12 (Wyo. 2015)). "The appellant bears the burden of demonstrating the district court abused its discretion." *Id.* (citing *Wise*, ¶ 42, 346 P.3d at 12).

[¶7]   Our review of a trial court's factual findings after a bench trial is for clear error. *Sorum v. Sikorski*, 2024 WY 124, ¶ 10, 559 P.3d 153, 160 (Wyo. 2024); *Redland v. Redland*, 2012 WY 148, ¶ 48, 288 P.3d 1173, 1185–86 (Wyo. 2012) (quoting *Claman v. Popp*, 2012 WY 92, ¶ 22, 279 P.3d 1003, 1012 (Wyo. 2012)).

> The factual findings of a judge are not entitled to the limited review afforded a jury verdict. While the findings are presumptively correct, the appellate court may examine all of the properly admissible evidence in the record. Due regard is given to the opportunity of the trial judge to assess the credibility of the witnesses, and our review does not entail re-weighing disputed evidence. Findings of fact will not be set aside unless they are clearly erroneous. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.

*Redland*, ¶ 48, 288 P.3d at 1185–86 (quoting *Claman*, ¶ 22, 279 P.3d at 1012); *see also Crouch v. Cooper*, 2024 WY 98, ¶ 13, 556 P.3d 199, 204 (Wyo. 2024). "Findings may not be set aside because we would have reached a different result." *Sorum*, ¶ 10, 559 P.3d at 160 (quoting *Strong Constr., Inc. v. City of Torrington*, 2011 WY 82, ¶¶ 8–9, 255 P.3d 903, 907 (Wyo. 2011)).

> [Further,] we assume that the evidence of the prevailing party below is true and give that party every reasonable inference that can fairly and reasonably be drawn from it. We do not

2

substitute ourselves for the trial court as a finder of facts; instead, we defer to those findings unless they are unsupported by the record or erroneous as a matter of law.

*Sorum*, ¶ 10, 559 P.3d at 160 (quoting *Strong Constr.*, ¶¶ 8–9, 255 P.3d at 907); *see also Redland*, ¶ 48, 288 P.3d at 1185–86.

## *DISCUSSION*

### I. *Did the district court abuse its discretion when it allowed Mr. Black to use an exhibit that had not been produced during discovery?*

[¶8]   Under Rule 26(a)(1)(A), a party is required to disclose, without waiting for a discovery request, all documents which it may use to support its claims or defenses. W.R.C.P. 26(a)(1)(A).[2]   At trial, during his testimony, Mr. Black referred to a document labeled Exhibit W.  Exhibit W was comprised of selected pages from a diary of notes Mr. Black kept for his ranching activities.  It indicated days Ms. Winfield and Mr. Robinson worked for him, along with their activities, and supported his testimony that Ms. Robinson worked for him a minimum of 29.5 days.  Exhibit W was not produced prior to trial.  Ms. Winfield and Mr. Robinson objected and contended, as they do here, that Rule 26(a) required Mr. Black to submit the document to Ms. Winfield and Mr. Robinson during discovery and his failure to do so was a discovery violation.  They argued under Rule

---

[2] Rule 26(a) provides:

**Duty to Disclose; General Provisions Governing Discovery.**
(a) *Required Disclosures.* —
    (1) Initial Disclosure. —
        (A) In General. — Except as exempted by Rule 26(a)(1)(B) or as otherwise stipulated or ordered by the court, a party must, without awaiting a discovery request, provide to the other parties, but not file with the court, unless otherwise ordered by the court or required by other rule:

        .   .   .

        (ii) a copy — or a description by category and location — of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses, unless the use would be solely for impeachment;
        (iii) a computation of each category of damages claimed by the disclosing party — who must also make available for inspection and copying as under Rule 34 the documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based, including materials bearing on the nature and extent of injuries suffered;
        . . . .

3

37(c),[3] which governs sanctions for discovery violations, Mr. Black should not have been able to use the information in Exhibit W during his trial testimony. The district court overruled the objection, and Mr. Black never offered Exhibit W for admission.[4] On appeal, Ms. Winfield and Mr. Robinson argue that the district court abused its discretion when it allowed Mr. Black to rely upon Exhibit W and that the error warrants reversal.

[¶9]   Under Rule 37(c), when "a party fails to provide information" as required by Rule 26, "the party is not allowed to use that information . . . at a trial," unless the failure is harmless. *See Dishman v. First Interstate Bank*, 2015 WY 154, ¶ 29, 362 P.3d 360, 370 (Wyo. 2015). Ms. Winfield and Mr. Robinson assert they were harmed by Mr. Black's failure to produce Exhibit W because they were unable to examine him about the document during his deposition. However, counsel for Ms. Winfield and Mr. Robinson did cross-examine Mr. Black at trial, stipulated to Exhibit W's admission in subsequent questioning, and used it to discredit its reliability by pointing out it did not reference the animals boarded by Ms. Winfield. Under these circumstances, the district court did not abuse its discretion because any error in allowing Mr. Black to use Exhibit W was harmless.

## II.    *Did the district court clearly err when it found that Ms. Winfield and Mr. Robinson had not established their unjust enrichment claims?*

[¶10] "Unjust enrichment (or *quantum meruit*) is an equitable remedy which implies a contract so that one party may recover damages from another." *Statzer v. Statzer*, 2022 WY 117, ¶ 13, 517 P.3d 574, 579 (Wyo. 2022) (quoting *Elec. Wholesale Supply Co. v. Fraser*, 2015 WY 105, ¶ 27, 356 P.3d 254, 261 (Wyo. 2015)). To establish unjust enrichment, the plaintiff must prove:

> (1) Valuable services were rendered, or materials furnished,

---

[3] Rule 37(c) provides:
> (1) Failure to Disclose or Supplement. — If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), **the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless**. In addition to or instead of this sanction, the court, on motion and after giving an opportunity to be heard:
>> (A) may order payment of the reasonable expenses, including attorney's fees, caused by the failure;
>>
>> .    .    .
>>
>> (C) may impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)–(vi).

W.R.C.P. 37(c)(1)(A) and (C) (emphasis added).

[4] Counsel for Ms. Winfield and Mr. Robinson then asked the court to admit Exhibit W "so that it [could] be reviewed at a later date." The court took the matter under advisement to determine whether it would admit the exhibit for subsequent review by this Court but did not issue a ruling on the question. Later, the parties stipulated to its admission.

4

(2) to the party to be charged,

(3) which services or materials were accepted, used and enjoyed by the party, and,

(4) **under such circumstances which reasonably notified the party to be charged that the plaintiff, in rendering such services or furnishing such materials, expected to be paid by the party to be charged**. Without such payment, the party would be unjustly enriched.

*Statzer*, ¶ 13, 517 P.3d at 579 (emphasis added) (quoting *Elec. Wholesale*, ¶ 27, 356 P.3d at 261). We have explained:

Element four is the heart of an unjust enrichment claim. The receipt of a benefit must be unjust as to the party to be charged. Unjust enrichment is an equitable remedy that is appropriate only when the party to be charged has received a benefit that in good conscience the party ought not retain without compensation to the party providing the benefit. "The words 'unjust enrichment' concisely state the necessary elements of an equitable action to recover money, property, etc., which 'good conscience' demands should be set over to the appellee by appellants pursuant to an implied contract between them." *Landeis v. Nelson*, 808 P.2d 216, 218 (Wyo. 1991). As stated at 66 Am. Jur. 2d *Restitution and Implied Contracts* § 8 (2001):

The phrase "unjust enrichment" is used in law to characterize the result or effect of a failure to make restitution of, or for, property or benefits received under such circumstances as to give rise to a legal or equitable obligation to account therefor. It is a general principle, underlying various legal doctrines and remedies, that one person should not be permitted unjustly to enrich himself at the expense of another, but should be required to make restitution of or for property or benefits received, retained, or appropriated, where it is just and equitable that such restitution be made, and where such action involves no violation or frustration of law or opposition to public policy, either directly or indirectly.

*Redland*, ¶ 146, 288 P.3d at 1205–06 (citations omitted).

[¶11]   The district court found that Ms. Winfield and Mr. Robinson had established the first three elements of their unjust enrichment claims but failed to establish the first component of the fourth element—that the circumstances were such that Mr. Black was reasonably notified that Ms. Winfield and Mr. Robinson expected to be paid for their work. The district court made the following credibility findings: The court found Mr. Black to be "substantially not credible" based on Mr. Black's refusal to acknowledge undisputed facts, his vague testimony, and his combative nature.  It found Ms. Winfield to be "generally not credible" because she was not able to recall details and the "minimal physical evidence" supporting her claims.  In contrast, the court found Mr. Robinson to be "largely credible." We keep these credibility findings in mind in our review of the evidence and testimony presented at trial.

[¶12]   Actual knowledge or notification of an expectation of payment is "not a prerequisite to finding unjust enrichment."  *Schlinger v. McGhee*, 2012 WY 7, ¶ 24, 268 P.3d 264, 272 (Wyo. 2012), *as amended on reh'g* (Feb. 7, 2012).   "It is enough if circumstances 'reasonably notified the party being charged that the other party would expect payment for the services.'"  *Id.*   We conclude the record established circumstances that reasonably notified Mr. Black that Ms. Winfield and Mr. Robinson expected payment for their work.

[¶13]   It is undisputed that Mr. Black had a history of paying Ms. Winfield for her work. Prior to the interval at issue here (April 2020 to July 2021), Mr. Black paid Ms. Winfield a salary when she worked full time, and he paid her a day labor rate when she worked on an occasional basis.  It is also undisputed that Ms. Winfield borrowed money from Mr. Black; Mr. Black sued her to recover what she owed him; and he obtained a judgment of $25,828.52 against her.  When questioned about whether Mr. Black understood that she expected to be paid, Ms. Winfield testified that Mr. Black told her "to keep track of everything and [they] would square up later" and "to keep track of everything, of the days that [she and Mr. Robinson were] working and whatnot."  Mr. Robinson acknowledged that he and Ms. Winfield did not have a contract with Mr. Black but testified that "Ms. Winfield owed Mr. Black some money in advance before this, and I had no problem in trying to work that debt off, so I was agreeing to this, assuming that this was going to [take care] of the debt that she owed to him."

[¶14]   At some point in time, Ms. Winfield and Mr. Robinson directly addressed their expectation of payment with Mr. Black: Ms. Winfield testified that she told Mr. Black on a "couple [of] occasions" that they "needed to get squared up."  After these discussions, Ms. Winfield and Mr. Robinson told Mr. Black he needed to pay them for boarding his livestock.  Mr. Black, then, asked Ms. Winfield and Mr. Robinson to return the livestock and they responded they would return the livestock after he paid his outstanding bill.  The parties also discussed payment at a meeting at the Sundowner, a restaurant in Riverton where Ms. Winfield and Mr. Robinson presented Mr. Black with a bill for their services. Mr. Black testified that he was dissatisfied with the bill because it lacked detail, but Mr.

6

Black did not assert that he did not owe Ms. Winfield or Mr. Robinson for the work they performed.

[¶15] During his testimony, Mr. Black discussed his view of Ms. Winfield's work arrangement during the relevant period. He testified he was "trying to help [Ms. Winfield] out" and "[s]he bec[a]me a day laborer . . . to help gather cows, sort cattle, move cattle. Just general ranch work." This statement, alone, demonstrates that Mr. Black expected and intended to compensate Ms. Winfield for her work as a day laborer.

[¶16] Over approximately 15 months (April 2020 through July 2021 and two days in November 2021), both Ms. Winfield and Mr. Robinson spent a significant amount of time working for Mr. Black. Evidence that Mr. Robinson worked 61 days was uncontested. Ms. Winfield calculated she worked 90 days for Mr. Black. While Mr. Black did not believe Ms. Winfield worked 90 days, he conceded she worked 29.5 days for him. In sum, over a relatively short time, Mr. Robinson worked approximately two months, and at minimum, Ms. Winfield worked one month for Mr. Black.

[¶17] The type of work contributed by Ms. Winfield and Mr. Robinson is also noteworthy. Their work included building a fence and a containing pen on Mr. Black's property prior to branding, building a second fence on the property Mr. Black leased, traveling to and from Nebraska to pick up cake for Mr. Black, and boarding Mr. Black's animals. To build the fence and containing pen, Ms. Winfield and Mr. Robinson had to clear the area by removing debris (including an old building and trash), brush, and an old fence; stretch old fence wire for re-use; and set posts. Mr. Robinson owned and supplied all the equipment necessary to perform the work and paid another individual to assist him.

[¶18] The context, quantity, and nature of the work performed by Ms. Winfield and Mr. Robinson establish that Mr. Black was reasonably notified they expected to be compensated and that he would have been unjustly enriched without such compensation. *See Statzer*, ¶ 13, 517 P.3d at 579. The uncontested facts in the record—Mr. Black paid Ms. Winfield for her work in the past, Ms. Winfield's and Mr. Robinson's goal in working for Mr. Black was to reduce Ms. Winfield's debt to Mr. Black, and Mr. Black was "trying to help [Ms. Winfield] out"—lead to only one reasonable conclusion: Mr. Black expected to pay Ms. Winfield and Mr. Robinson for their work or to credit Ms. Winfield against the money she owed him. Moreover, on at least a couple of occasions, Mr. Black was directly notified that Ms. Winfield and Mr. Robinson expected payment. The quantity and nature of the work performed by Ms. Winfield and Mr. Robinson also demonstrate this was not a "quid pro quo situation." Mr. Black could not have reasonably believed that Ms. Winfield and Mr. Robinson were volunteering a combined 90 days of work, using Mr. Robinson's equipment, and hiring additional help out of their pocket with no expectation of payment.

[¶19] After a comprehensive review of the record, we are "left with the definite and firm conviction" that the district court erroneously concluded that Mr. Black did not have

reasonable notification that Ms. Winfield and Mr. Robinson expected compensation for their efforts.

[¶20]  The district court also concluded that "[e]ven if Winfield and Robinson prevailed on their unjust enrichment claims," they "failed to establish most of their damages." "In Wyoming, damages must be proven with a reasonable degree of certainty, but proof of exact damages is not required." *WSP, Inc. v. Wyo. Steel Fabricators & Erectors, Inc.*, 2007 WY 80, ¶ 19, 158 P.3d 651, 655 (Wyo. 2007) (citation omitted). "That said, '[a] district court may not speculate or conjecture about the proper amount of damages.'" *Goforth v. Fifield*, 2015 WY 82, ¶¶ 39–40, 352 P.3d 242, 249–50 (Wyo. 2015) (quoting *WSP*, ¶ 19, 158 P.3d at 655). While we agree with the district court that some of the claimed damages were not proven,[5] Ms. Winfield and Mr. Robinson proved damages for their day labor, hot shot fees,[6] and boarding and feeding Mr. Black's livestock.

[¶21]  Mr. Black conceded Ms. Winfield worked a minimum of 29.5 days for him and did not contest that Mr. Robinson worked 61 days. *See supra* ¶ 16. Mr. Black testified he paid $125/day for day work. Ms. Winfield and Mr. Robinson calculated their claim for damages at $100/day. At the claimed rate, damages for Ms. Winfield's and Mr. Robinson's labor are $2,950 and $6,100, respectively. It was also uncontested that Mr. Robinson hired and paid Robert Terry to assist in building fence for Mr. Black. Mr. Terry (who the district court found to be credible) testified that he worked 11-13 days for the benefit of Mr. Black. Applying the $100/day rate to the minimum 11 days worked results in damages of $1,100.

---

[5] This includes the compensation claimed for work done by Ms. Winfield's son, the amount Ms. Winfield was owed for catering, and the fees owed for use of Mr. Robinson's equipment.

     The district court made no reference to the damages claimed by Ms. Winfield for her then 9-year-old son's time. The record is sparse as to the number of days worked by Ms. Winfield's son and is devoid of evidence as to a reasonable rate for his labor.

     Regarding catering services, the district court concluded the "evidence was wholly insufficient to show the economic benefit [to Mr.] Black." Ms. Winfield claimed Mr. Black owed her $4,800 for catering services. The extent of Ms. Winfield's testimony regarding catering established that she catered for him on three occasions and that he regularly paid other people who catered for him. Her damage claim is unsupported by receipts or other evidence indicating the value she provided. We agree with the district court that she did not adequately establish these damages.

     With respect to equipment operation fees, Mr. Robinson testified as to what he would normally charge others for the use of his equipment, but the district court found that was "not enough to show the value of the benefit to [Mr.] Black." There was conflicting evidence regarding the appropriate charges for Mr. Robinson's equipment. As the district court remarked, there was "no discussion of what operator fees were for or whether the fees were reasonable." Mr. Robinson testified that the day rates for the truck and trailer used for the horses were $90 and $70, respectively ($160 total), but he sought $250/day for their use, and it is difficult to determine from the record what equipment was used and the number of days.

[6] Hot shot services are generally described as a type of trucking service that transports smaller and often time-sensitive loads. Hot shot services are used to deliver goods quickly, often to a single location or customer. https://www.google.com/search?sca_esv=51f7b59329830e8d&rlz=1C1GCGX_enUS1123US 1124&q=Hot+shot+services+definition+usa&sa=X&ved=2ahUKEwjUqdik6paLAxUMEzQIHbW4E1Y Q1QJ6BAhSEAE&biw=1490&bih=870&dpr=1 (last visited Feb. 27, 2025).

[¶22] Ms. Winfield and Mr. Robinson claimed a total of $4,071.60 for hot shot services on four separate occasions—a trip to Nebraska to pick up cake for Mr. Black and three trips to haul materials to the location where they built the pen and fence. Mr. Robinson testified these fees were based on a rate of $2.90/mile, the rate he normally charges for such services and a competitive rate in the industry. Mr. Robinson conceded that Mr. Black paid for an initial fuel fill-up prior to the Nebraska trip, but there was no evidence regarding the amount paid. Further, there were additional trips to the pen/fence site for which Mr. Robinson did not charge hot shot fees. In any event, the evidence shows that the round trip to Nebraska was 588 miles and the three round trips to the pen/fence site totaled 816 miles. Based on the $2.90/mile rate, Ms. Winfield and Mr. Robinson established their claimed hot shot fees which total $4,071.60.

[¶23] Regarding boarding fees, the district court stated that it "accepts Winfield's chronology of the care of the animals . . . as true." However, the court found that "Winfield and Robinson failed to establish most of their damages as to the boarding of Black's animals, apart from feeding fees" and concluded "that most of the damages [for boarding] would be barred under the doctrine of mitigation . . . ."

[¶24] At trial, the parties disputed the reasonableness of Ms. Winfield's charged boarding rate of $300 per month per head. In addition, the record establishes that Ms. Winfield returned some of Mr. Black's animals to him, but kept others, even after he requested their return. The record on appeal contains no evidence establishing when Mr. Black requested the return of those animals. We agree with the district court that Ms. Winfield and Mr. Robinson failed to establish most of their damages for boarding, and they failed to mitigate their damages when they did not return Mr. Black's livestock to him upon his request.[7]

---

[7] "The [d]octrine of mitigation of damages, sometimes called [the] doctrine of avoidable consequences, imposes on [an] injured party [the] duty to exercise reasonable diligence and ordinary care in attempting to minimize his damages after injury has been inflicted[.]" *Hacker Oil, Inc. v. Hacker*, 2024 WY 3, ¶ 12, 540 P.3d 1187, 1189 (Wyo. 2024) (citations and quotation marks omitted).

> Where a defendant has "committed an actionable wrong," the law precludes recovery for harm resulting from the "the injured person's lack of care." *S-Creek Ranch, Inc. v. Monier & Co.*, 509 P.2d 777, 782 (Wyo. 1973) (quoting *Southport Transit Co. v. Avondale Marine Ways, Inc.*, 234 F.2d 947, 952–54 (5th Cir. 1956)). Public policy discourages people from wasting their physical or economic resources. *Id.*

*Hacker Oil*, ¶ 12, 540 P.3d at 1189. "The doctrine of avoidable consequences 'applies to the time during which damages are accruing, not to the election of remedies after damages have occurred.'" *Id.* ¶ 13, 540 P.3d at 1190 (quoting *Reed v. Aaacon Auto Transp., Inc.*, 637 F.2d 1302, 1305 (10th Cir. 1981), *overruled on other grounds by Underwriters at Lloyds of London v. N. Am. Van Lines*, 890 F.2d 1112 (10th Cir. 1989)). Mitigation of damages "is not an affirmative defense to liability; it is an affirmative defense to reduce the amount of damages a plaintiff is entitled to after liability has been found." *Id.* We review de novo whether mitigation of damages is applicable in this matter. *Id.* ¶ 9, 540 P.3d at 1189.

However, Mr. Black conceded that he owed Ms. Winfield $8,572 for boarding, establishing at minimum damages in that amount.

[¶25]  Ms. Winfield and Mr. Robinson proved damages for day labor ($10,150), hot shot fees ($4,071.60), and boarding ($8,572), which total $22,793.60.  The district court is directed to enter judgment in their favor accordingly.

### *CONCLUSION*

[¶26]  The district court did not abuse its discretion when it allowed Mr. Black to use Exhibit W to refresh his recollection at trial.  However, it clearly erred when it found that Ms. Winfield and Mr. Robinson had not established their claims for unjust enrichment and that they had failed to prove any damages.  We reverse and remand for entry of judgment in favor of Ms. Winfield and Mr. Robinson.